[L. A. No. 16028. In Bank.—March 30, 1937.]

WILLIAM E. DUDNEY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

[L. A. No. 16030. In Bank.—March 30, 1937.]

OLIN N. MacKAY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

WILLIAM E. DUDNEY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

William E. Dudney, *in pro. per.*, and Roland G. Swaffield for Petitioners.

Philbrick McCoy for Respondent.

THE COURT.—Olin N. MacKay and William E. Dudney are petitioners in two separate proceedings to review recommendations of the board of governors of The State Bar that each of them be disbarred from the practice of the law in the state of California.

In July, 1935, The State Bar in its proceeding, L. A. No. 785, issued a notice directing Dudney to show cause why he should not be disciplined for professional misconduct. This notice alleges that Dudney, well knowing that one A. Lee Graham was in fact an ex-convict, and was not and had never been a member of The State Bar of California nor entitled to practice law, caused the name of Graham to be signed to a petition for a writ of mandate filed by Dudney in the District Court of Appeal, and that thereafter Dudney appeared before the District Court of Appeal with Graham and represented to the court that Graham was entitled to practice law.

Within a few days thereafter, The State Bar commenced its proceeding L. A. No. 786 and issued a notice directing the petitioners to show cause why each of them should not be disciplined for professional misconduct. In this proceeding it is charged that subsequent to February, 1935, Dudney and MacKay and each of them were well aware that A. Lee Graham was an ex-convict and was not a member of The State Bar of California nor entitled to practice law but that he did practice law from offices maintained by them and with the knowledge, aid and consent of each of them. It is also alleged that while so associated in the offices of the petitioners and practicing law therein, Graham was arrested upon a charge of violating section 49 of The State Bar Act of California, and that thereupon Dudney and MacKay aided and abetted Graham in fleeing to San Francisco.

In the following month The State Bar initiated a third proceeding, L. A. No. 796, in which MacKay was directed to show cause why he should not be disciplined for professional misconduct. The charges in this proceeding are that Mac-Kay, knowing that A. Lee Graham was an ex-convict and not a member of The State Bar of California nor entitled to practice law, associated Graham in a case pending in the Superior Court of Imperial County and that he represented to the court that Graham was an attorney at law. It is also alleged that MacKay had Graham appear in a case pending in the Municipal Court of Los Angeles in which MacKay was the attorney of record and make certain motions; that Graham did appear before the court and did practice law there with the knowledge and consent of MacKay, and that on these and other occasions MacKay paid Graham part of his fees.

Each of the notices to show cause alleges that the acts of Dudney and MacKay which are charged as misconduct involved moral turpitude and dishonesty. Also it is alleged that by these acts the petitioners violated certain of the Rules of Professional Conduct of The State Bar and also the provisions of section 287 of the Code of Civil Procedure. In case L A No. 786 the violation of section 282 of the Code of Civil Procedure, is also charged.

The three proceedings were heard separately by local administrative committee No. 13 of Los Angeles County. The recommendation of the committee in proceeding L. A. No. 785

was that Dudney be suspended for a period of six months. In proceeding L. A. No. 796 the committee recommended that MacKay be suspended for a period of one year. In proceeding L. A. No. 786 disbarment of both Dudney and MacKay was recommended. When the reports and determinations of the committee came before the board of governors of The State Bar, the three proceedings were consolidated. The board approved and adopted the findings of fact of the committee and recommended to this court that Dudney and MacKay be disbarred.

The charges against the petitioners relate almost entirely to the association of each of them with Graham. In view of the consolidation of the cases by The State Bar the two proceedings before us will be considered together.

Dudney was admitted to the bar in 1929. MacKay was admitted in 1924. In 1934 and for a period of time thereafter, they shared offices as attorneys at law. In the same suite of offices were others, including one Edward A. Wilson, an investigator, and Graham, an ex-convict on parole. During a greater portion of the time when the acts charged as misconduct occurred, MacKay and Dudney had offices together. The offices were moved at one time to another location in the building, but the association of these persons continued.

In May, 1934, MacKay was representing a defendant in a criminal case being heard in the Superior Court of Los Angeles County. Graham was sitting at the counsel table with MacKay and the judge, in the course of the trial, asked MacKay if Graham was an attorney. MacKay replied that Graham was not an attorney but was a clerk who was assisting him in the case.

About that same month Wilson informed both MacKay and Dudney that Graham had been in trouble and that because of the regulations governing licensed investigators he could not be associated in the same office with him. In the summer of that same year MacKay, Wilson and Dudney and others who had offices in the suite discussed the character of Graham.

In October, 1934, Dudney filed a petition for a writ of mandate in the District Court of Appeal. The names of Dudney and Graham were signed as attorneys for the petitioner. Dudney and Graham appeared at the hearing on the

alternative writ which had been issued and Graham presented the argument.

In January, 1935, MacKay and Graham went to Imperial County, where they appeared in the superior court on the hearing of a motion in a case in which MacKay was the attorney of record. They had previously made a trip together to Imperial County in connection with the case. At that time they called upon the judge and discussed further proceedings they anticipated taking in the case. There is some evidence that when the motion was heard in open court Graham, in the presence of MacKay, presented some of the argument. MacKay admits that he paid Graham part of the fee he received for his services in this case.

On February 6th Graham, at the request and with the knowledge of MacKay, appeared before Judge A. A. Scott, of the Municipal Court of the City of Los Angeles, in a criminal case in which Mackay was the attorney of record. The matter before the court was the hearing of the defendant's application for probation. Graham, at the request of MacKay, made certain representations to the court. According to Judge Scott, Graham stated at that time that he appeared for MacKay, who was out of town and engaged in trial. The court refused a continuance and sentenced the defendant.

On February 9th Graham was arrested charged with a violation of rule 49 of the State Bar Act. He immediately got in touch with MacKay, who was then at a bail bond office, and was released on bail. In the evening of that same day, Graham appeared before Judge Scott for arraignment. MacKay, who was representing Graham, talked to Judge Scott in chambers about the case. Afterward in open court MacKay stated that Graham was from his office; that he had known him for some period of time; that if he were released on his own recognizance that certain bail bond fees would not have to be paid; and that if Graham were released MacKay would personally guarantee his appearance. Judge Scott recognized Graham as the man who had appeared before him a few days before. As Graham was charged under several different names, Judge Scott asked him which was his true name. Graham replied, "W. S. Graham". Graham was then released on his own recognizance and the trial was set for February 21st.

There is evidence tending to show that on previous occasions the name of "W. S. Graham" had been used by A. Lee Graham; also that MacKay was aware of this use, although MacKay had known him as A. Lee Graham. MacKay did not tell Judge Scott either that Graham was an ex-convict or that MacKay had reason to believe that he was, or that for a long period of time he had known him as A. Lee Graham, but not W. S. Graham.

The Los Angeles papers of February 12th carried the story of Graham's arrest. These papers were read by MacKay. Graham on this same day decided to leave Los Angeles. He asked MacKay for money. MacKay collected some money from a client and gave it to Graham at Graham's apartment that same evening. It had been arranged that Wilson was to take Mr. and Mrs. Graham to Wilmington the afternoon of February 13, 1935. This he failed to do. Dudney then procured other means of transportation for them. Dudney and Mr. and Mrs. Graham went to Wilmington in an automobile driven by a friend of Dudney. The plan was for the Grahams to take a boat to San Francisco. They missed the boat. In a conference between the Grahams and Dudney, a part of which at least Dudney's friend overheard, it was decided that it would be best for the Grahams to stay away from Los Angeles for the present. The entire party then proceeded to Long Beach, where the Grahams registered at a hotel in the presence of Dudney. They used an assumed name. Two days later they sailed for San Francisco.

When Graham's case was called for trial he was not present. MacKay appeared and upon questioning by Judge Scott as to the present whereabouts of Graham, he stated that he did not know where Graham was and that he was holding Graham's mail at the office. MacKay also informed Judge Scott that he first learned of Graham's leaving Los Angeles on or about February 19th. Upon being asked why the court was not informed of this, MacKay's answer was that he did not know why, or that he thought the court knew of it. Judge Scott told MacKay that as an officer of the court he should make a diligent search for Graham and ordered him to report the results of his endeavors in the afternoon of the same day. At 2 o'clock MacKay again appeared and stated that he had not found anything new. A bench warrant was

then issued and Graham was later apprehended at San Rafael.

The record shows that after the story of Graham's arrest appeared in the papers and before his case was called for trial MacKay told Graham's father that he did not know where Graham was. The father of Graham testified that MacKay told him his son had been taken care of financially.

All of the facts which have been stated stand practically uncontradicted. It appears beyond question that from at least the month of May, 1934, until early in February of the following year Graham and the petitioners were closely associated. He had worked with them and for them on legal matters. He received no regular compensation from either of them, but was paid for his work on the basis of what he did in each particular matter. He worked in the petitioners' offices. He used their telephone, their stationery, their books and their facilities. The records are voluminous and show a course of dealing over a long period of time which unmistakably shows that Graham worked with each of the petitioners on much of their legal business.

MacKay admitted that after the trip to Imperial County in January he learned that Graham was an ex-convict. Dudney states that after the hearing in the District Court of Appeal someone told him that Graham had been in the penitentiary. It is inconceivable that these two lawyers who were handling criminal business did not know of Graham's record at least from the time Wilson told them that Graham had been in trouble. It is difficult to believe that they did not appreciate the force of Wilson's warning. He told them he could not have anyone in his office "that has any record". However, the evidence clearly shows that after each was told that Graham was an ex-convict, both Dudney and MacKay continued their association with him and allowed him to participate in their legal business.

But aside from Graham's previous record, there can be no question from the evidence that Dudney and MacKay each had a part in getting him released on bail after he was arrested and in helping him to leave Los Angeles. Graham had been given his liberty on his own recognizance upon the representations of MacKay that he had known him for some considerable period of time and would have him in court on February 21st. While the record does not show that Dudney

had any part in obtaining Graham's release, it is more than a reasonable inference that Dudney knew of the charges against Graham and his arrest upon them. There is evidence that Dudney told his friend who took the Grahams to Wilmington that Wilson should have taken them but he was yellow. Dudney's actions clearly indicate that what he did was part of a definite plan made by him and others to get Graham out of town.

■ The findings of the committee in case L. A. No. 785 are that Dudney, knowing that Graham was an ex-convict and was not a member of The State Bar, caused the name of Graham to be signed to the petition for a writ of mandate presented to the District Court of Appeal and thereafter represented to the court that Graham was a licensed attorney. In case L. A. No. 786 the committee found that Dudney and MacKay each knew that Graham was not a member of The State Bar nor entitled to practice law and that he was an ex-convict, but that Graham engaged in the practice of law with the knowledge, aid and consent of the petitioners. It also found that after the arrest of Graham, Dudney and Mac-Kay conspired to aid and abet Graham in his plan to leave the city of Los Angeles and remain hidden in order to avoid prosecution. In case L. A. No. 796 the committee found that MacKay, knowing that Graham had been convicted of a felony and was not entitled to practice law in the state of California, associated Graham in the case pending in the Superior Court of Imperial County; that he permitted Graham to present this case in open court and led the judge of that court to believe that Graham was an attorney at law, entitled to practice therein.

These findings are amply supported by the evidence. The acts of the petitioners show a course of conduct directly at variance with the standard set for attorneys at law by section 282 of the Code of Civil Procedure. They also show sufficient ground for disbarment under the provisions of section 287 of the same code. Dudney made only an indifferent attempt to defend the charges against him. ■ Possibly this was because of his record, which shows that he was publicly reprimanded by this court in 1931 (*Dudney* v. *State Bar,* 214 Cal. 238 [4 Pac. (2d) 770]), and that in 1935 he was suspended for thirty days. (*In re Suspension of Dudney,* Misc. 1393.) This record may appropriately be considered

in connection with the present proceedings. (*Mills* v. *State Bar*, 6 Cal. (2d) 565 [58 Pac. (2d) 1273].) While MacKay attempts to clothe all of his conduct with the mantle of innocence, it is impossible to believe that he is as unsophisticated and naive as he claims to be. His acts speak much more positively and accurately than his explanation of them.

■ The State Bar Act is designed to provide a procedure whereby those attorneys at law who prove recreant to their trust may be removed from the ranks of the profession. The public, as well as the legal profession and the courts must be protected from those who do not measure up to their responsibilities. Government largely depends upon the stability of the courts and, to a considerable extent, upon the integrity of the members of the legal profession. The purpose of disbarment proceedings is not to punish the individual but to determine whether the attorney should continue in that capacity. (*Marsh* v. *State Bar*, 2 Cal. (2d) 75 [39 Pac. (2d) 403].) Measured by these principles the action of the board of governors is fully justified by the findings.

It is ordered that William E. Dudney and Olin Ninde MacKay be disbarred from the practice of law in all of the courts of this state and that the name of each be stricken from the roll of attorneys, effective thirty days after this order becomes final.