[L.A. No. 30177. In Bank. Apr. 15, 1974.]

WILLIAM G. EMSLIE, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

214

## COUNSEL

Gerald G. Reppetto for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

## OPINION

**THE COURT.—** ▮ This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that William G. Emslie be disbarred, based upon findings that he wilfully violated his oath and duties as an attorney at law by the commission of acts involving moral turpitude and dishonesty (Bus. & Prof. Code, §§ 6103, 6067, 6068, 6106)[1]

---

[1]Unless otherwise noted, all code references are to the Business and Professions Code.

in other than a professional capacity, namely, by burglarizing certain hotel rooms in the City of Las Vegas, Nevada, in May 1969, taking jewelry and other property from those hotel rooms, and selling said property or converting it to his own use.

Emslie was admitted to practice law in this state in 1961. This is the second disciplinary proceeding against him. He is currently on five years' probation, with two years' actual suspension, by order of this court entered January 10, 1972; the period of actual suspension extended to February 1, 1974; the probationary period to February 1, 1977. (Bar Misc. 3442 [L.A. Nos. 1969, 1970, 1972].)[2] When the above order was made this court was not aware of the aggravated misconduct revealed by the present record.

There was substantial oral and documentary evidence to support the findings of the disciplinary committee. These may be summarized as follows: For six months prior to May 29, 1969, there had been numerous burglaries following the theft of room keys at swimming pools of hotels in the Las Vegas, Nevada, area; on May 29, 1969, Emslie was observed picking up a key from the swimming pool area at Caesar's Palace Hotel, where he was not a registered guest; he was apprehended by hotel security officers who found eight hotel room keys in his pockets; they called the sheriff's office. Deputy Sheriff John Davis made the arrest, giving Emslie his *Miranda* rights (*Miranda v. Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). Emslie consented to a search of his room at the Rodeway Inn. Found in that room were numerous items of jewelry, radios, binoculars, cameras, and similar items of personal property. Also found were credit cards and a driver's license in the name of

---

[2]Emslie waived in writing his right to petition for review in that matter.

The proceeding concerned events which took place during the period May 1965-May 1969. It was found that in three matters Emslie had misappropriated a total of $22,225.87; in one matter he committed acts of fraud and concealment to obtain personal use of guardianship funds of a minor; and in two matters he neglected and abandoned his clients.

The local committee recommended *four years' probation* on condition, noting (1) that the misconduct involved would *not* normally justify probation; (2) but that Emslie had shown complete remorse and an attempt to make restitution to the extent possible; and (3) that he evidenced an apparent rehabilitation from his moral and ethical lapses as evidenced by his employment by and services to the Legal Aid Society of Orange County.

The disciplinary board added a finding regarding his use of amphetamines during the period 1965 through 1968. It recommended *five years' probation,* with one condition of probation being that Emslie obtain psychiatric or psychological help and furnish proof to the State Bar that he obtained such help or a certificate that such help was not needed.

This court imposed *two years' actual suspension* from practice with five years' probation and ordered that he comply with the conditions of probation.

Barnard Bitterman, part of the contents of a wallet reported stolen in a recent room burglary at Caesar's Palace. Emslie claimed that he had no car but the manager of the Rodeway Inn gave them a description of Emslie's car, which was found in the parking lot at Caesar's Palace Hotel. The arresting officers believed that they would find items incidental to the burglary arrest in the car and that this evidence might be removed by someone under Emslie's orders. They had the car towed to the sheriff's impound lot where it was searched without a warrant and was opened with Emslie's keys after he was booked. The trunk of the car contained miscellaneous tools and 52 keys to rooms in local hotels. Sheriff's Detective Blumberg, assigned to hotel and motel burglaries, was present at the search. It was discovered that nine of these keys were to rooms involved in recent burglaries.

The following day, after advising Emslie of his *Miranda* rights, Blumberg interviewed Emslie. Emslie told him he did not want an attorney present, that he had burglarized a number of hotel rooms and had taken jewelry and other property from them, that he had sold these as estate property to a jeweler named Prager in Las Vegas, whom he had previously known in Los Angeles, and that in Los Angeles Prager had told him he was interested in buying estate jewelry. Blumberg reviewed his list of crime reports and missing property reports with Emslie as to the nine rooms to which Emslie had keys. Following this conversation Blumberg prepared an affidavit for search warrant addressed to Prager Jewelers, listing specific items involved in two of the rooms which Emslie had admitted burglarizing. Prager gave the officers additional items not listed in the affidavit for search warrant which he said he had received from Emslie. Blumberg went over with Emslie about one-third of these items and Emslie identified some of them with specific hotel rooms he had burglarized. A criminal complaint was filed in the justice court of Las Vegas Township charging Emslie with two counts of burglary, a felony, on June 4, 1969; on June 18 Emslie was released on his own recognizance; he was told by his attorney that he was released on condition that he seek psychiatric assistance, which he has done; and on November 27, 1970, on motion of the district attorney's office in Las Vegas, the criminal charges were dismissed because of insufficient evidence.

The disciplinary board adopted the above findings, adding a finding that Emslie entered certain hotel rooms without permission, took jewelry and other property from those hotel rooms, and sold said property. It recommended that Emslie be disbarred and in making this recommendation took into consideration the record in the prior State Bar disciplinary proceedings against Emslie (Bar Misc. 3442, *supra*).

Petitioner denied the charges against him and moved to suppress evidence in the disciplinary proceeding. He testified that he was innocent of any wrongdoing, denied that he had unlawfully entered any hotel rooms in Las Vegas, denied that he had in his possession keys to hotel rooms in which he was not registered and denied that he ever removed property of other persons from hotel rooms without their consent. He denied having made the claimed admissions. He admitted that immediately prior to the period in question he had been gambling and losing heavily in Las Vegas; that he had a habit of giving money to gamblers who were down on their luck, and that to help them out he had bought from them items of jewelry knowing that he could always sell them for a few dollars each. He admitted having neglected his family and law practice during that period and that he had committed the acts charged in the prior disciplinary proceedings (Bar Misc. 3442).

Motion to suppress evidence was made on the grounds that he had been illegally seized, searched, handcuffed and detained by the hotel security officers; that he was illegally arrested by Deputy Sheriff Davis without a warrant and without probable cause on the "hearsay" statements of the hotel security officers; that he had not consented to the search of his room or of the car; and, by implication, that the articles found in his room and in the trunk of his car may have been implanted by the officers or others[3] in an attempt to frame him.

Emslie contends that he did not receive a fair hearing, that the findings of fact are not supported by clear and convincing credible evidence, that he was denied protection of constitutional guarantees of due process, and that the recommendations of the disciplinary board are therefore erroneous and unlawful.

*Scope of Review.*

■ The burden is upon one seeking a review of a recommendation of disbarment to show wherein the decision is erroneous or unlawful (Bus. & Prof. Code, § 6083, subds. (a), (c)) or that its findings are not supported by the evidence. (*Mosesian* v. *State Bar* (1972) 8 Cal.3d 60, 63 [103 Cal.

---

[3]Emslie testified that in early May 1969 he was no longer able to have his personal checks cashed in Las Vegas; he was referred to a money lender from whom he borrowed $200 for two weeks; he did not know how much interest would be required but knew it would be high; when he was unable to pay the $200 in the two-week period he was beaten up by two men who said he now owed them $500 and they threatened violence against him and his family if he told the authorities; he was again threatened by these persons while he was in the Las Vegas jail; and after he returned to Los Angeles he was blackmailed into paying them $1,000 on this loan.

Rptr. 915, 500 P.2d 1115].) ■ Findings of fact in such proceedings are not binding upon this court; although they are afforded great weight it is the duty of this court to independently examine the record, reweigh the evidence and pass on its sufficiency. (*Millsberg* v. *State Bar* (1971) 6 Cal.3d 65, 68 [98 Cal.Rptr. 223, 490 P.2d 543].) In this determination all reasonable doubts will be resolved in favor of the accused and if equally reasonable inferences may be drawn from a proven fact, the inference which leads to a conclusion of innocence rather than one leading to a conclusion of guilt will be accepted. (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 793-794 [94 Cal.Rptr. 825, 484 P.2d 993]; *Ashe* v. *State Bar* (1969) 71 Cal.2d 123, 133 [77 Cal.Rptr. 233, 453 P.2d 737].) ■ In meeting this burden the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. (*Himmel* v. *State Bar, supra,* 4 Cal.3d at p. 794.)

Where credibility of witnesses is in issue this court will give great weight to the findings of the local administrative committee which saw and heard them. (*Ridley* v. *State Bar* (1972) 6 Cal.3d 551, 559 [99 Cal.Rptr. 873, 493 P.2d 105].) This court is reluctant to reverse the decision of the committee where the findings are based primarily on testimonial evidence or where they resolve conflicts in the evidence. (*Lee* v. *State Bar* (1970) 2 Cal.3d 927, 940 [88 Cal.Rptr. 361, 472 P.2d 449].) ■ Although we give great weight to the local committee's findings that resolve conflicts in the testimony both the board and this court reach an independent judgment on the record before it. (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 916 [101 Cal.Rptr. 369, 495 P.2d 1289].) There were some minor conflicts as between the officers' testimony and the official records produced by them. There were some inconsistencies in Emslie's own statements. His testimony was in the most part directly in conflict with that given by the officers. This conflict was resolved adversely to him. We find no error in this regard.

*Fairness of the Administrative Hearing.*

The disciplinary hearings were properly held in the County of Los Angeles, where Emslie lived and where he had his office at the time the hearings commenced. (Rule 10, Rules of Procedure of the State Bar (Bus. & Prof. Code, foll. § 6087).) The witnesses whom Emslie now contends should have been produced lived in Las Vegas, Nevada. ■ The disciplinary committee may issue subpoenas to compel attendance of witnesses within the state (§ 6085) but it has no subpoena power outside the state. The Civil Discovery Act (Code Civ. Proc., § 2016 et seq.), as limited or adapted by the rules, constitutes the rules of discovery in State Bar dis-

ciplinary proceedings (rule 14) and depositions may be obtained on behalf of respondent. (Rule 14.13.)

At the first hearing, held November 2, 1971, the State Bar Examiner announced that he intended to call only Detective Blumberg of Las Vegas as a witness; that he had attempted to obtain other witnesses from that area (namely, the jeweler Prager, and two of the burglary victims, Mr. Leeds and Mrs. Cohen) without success; but that if it was necessary, at the end of his presentation he might move for a continuance to round up the other witnesses. When the hearing adjourned the chairman set the next hearing for November 30; asked Emslie to notify the examiner in writing of the date, time, place, and name or names of any person he desired to depose as a witness who was outside the subpoena power of the State Bar; suggested that Emslie and the examiner attempt to stipulate to the extent possible to the taking of such depositions; asked Emslie to give such notification on or before November 12, with date for deposition to be within adequate time to have the deposition available at the November 30th hearing; and offered to give extra time to Emslie if, due to unusual circumstances or for good cause, he could not take a deposition by that time.

Emslie did not submit any names to the committee for deposition purposes nor specify any facts which deposition testimony would establish. At the conclusion of the third hearing, held December 14, Emslie asked if there was any way he could have former Sheriff's Deputy Barnes come from Las Vegas to Los Angeles to testify as to an official document (impound report) which contained inconsistent statements. The chairman answered that possibly Barnes' deposition could be taken, that Barnes was beyond the State Bar subpoena power, and that the committee would not hold Emslie bound by that document (which he had offered) but would give it only such weight as a document so inconsistent deserved to be accorded.

Emslie appeared without counsel at the first three hearings although it had been strongly suggested to him that he should consider engaging counsel. At the conclusion of the third hearing he stated that he would like to have an opportunity to obtain counsel. He was allowed three weeks to designate the name of counsel. The chairman offered to provide counsel at State Bar expense, if Emslie was unable to pay, and also to provide a free copy of the transcript. Emslie accepted the offer of the transcript, and stated he would obtain his own counsel. The next hearing was held over three months later, on March 29, 1972, at which time counsel ap-

peared. No request for deposition testimony had been made by either Emslie or his counsel. Emslie testified in his own behalf.

During the hearings the committee held the examiner to a high standard in his examination of witnesses. Emslie had full opportunity to interpose objections to the evidence adduced. Some of his objections were sustained. There is absolutely no evidence to support Emslie's claim that the committee was biased and inflamed against him.

The committee carefully considered Emslie's motion to suppress, requiring its staff attorney to prepare a memorandum of points and authorities not only on the legal issues therein raised but on the further specific issue—whether illegally obtained evidence (assuming illegality was established as a fact) may be offered in support of charges of unprofessional conduct brought against a member of the State Bar, assuming also that there is no untainted evidence which would independently support those charges.

■ The motion to suppress was properly denied. The initial apprehension and detention of Emslie by the hotel security officer was in the nature of a citizen's arrest for a public offense committed or attempted in his presence. (Pen. Code, § 837.) The hotel security officers were not acting under the authority of the state in apprehending, detaining, searching or questioning Emslie at Caesar's Palace Hotel. ■ There are no state standards for "search and seizure" by a private citizen who is not acting as an agent of the state or other governmental unit and motion to suppress evidence so obtained cannot be made on the ground that its acquisition constitutes an unreasonable search and seizure under Penal Code section 1538.5 (motion to suppress). (*People* v. *Superior Court* (1969) 70 Cal.2d 123, 129 [74 Cal.Rptr. 294, 449 P.2d 230].)

■ There was probable cause for the arrest of Emslie without a warrant by Deputy Sheriff Davis at the hotel. The "hearsay" statements of the hotel security officers that one of them had seen Emslie pick up a hotel key at the pool area, that they had made him empty his pockets, and that the keys lying on the table had come from his pockets, were admitted for the nonhearsay purpose of evidencing the information upon which Davis acted. The witness of a crime is a reliable informant even though his reliability has not theretofore been tested. (*People* v. *Gardner* (1967) 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321].)

■ There was conflicting testimony as to whether Emslie was advised of his *Miranda* rights by Davis and/or Blumberg. However, Emslie did

admit at the hearing that Blumberg had *accurately advised him of his Miranda rights* but that he (Emslie) was confused and distraught at the time they were given.

There was credible evidence that Emslie did not make, and that the officers did not reject, a request for an attorney in Nevada. Both deputies testified that Emslie told them he was an attorney and did not want counsel. No explanation was given by anyone for the notation in the arrest report that when Emslie was rebooked (four additional charges of burglary were added after hotel keys were found in his car) that he "was again advised of his rights per the *Miranda* decision in the presence of his attorney Al Becker." Emslie said he did not have an attorney and he did not know any "Al Becker." This discrepancy is not of material significance in view of the testimony of the two officers that they did advise him and his admission in regard thereto.

 There was credible evidence that Emslie gave his consent to the search of his room at the Rodeway Inn. Search of the car presents a closer problem. There was no consent and no warrant. The arresting officer testified that at the time of that search he thought the search was legal as an incident to the arrest, that there was reason to believe that the car, parked in the hotel parking lot, contained contraband, that it might easily be removed by someone on Emslie's orders, and that he had ordered the car impounded and searched. At the time of the disciplinary hearing Davis, who by then was on the staff of the District Attorney of Clark County, Nevada, was of the opinion that the search had been illegally made.

The committee ruled that the warrantless search of the car was proper, citing *Chambers* v. *Maroney* (1970) 399 U.S. 42, 52 [26 L.Ed.2d 419, 428-429, 90 S.Ct. 1975]; *People* v. *Lovejoy* (1970) 12 Cal.App.3d 883, 887 [91 Cal.Rptr. 94]; *People* v. *Gurley* (1972) 23 Cal.App.3d 536, 556-557 [100 Cal.Rptr. 407].) We agree. This was not a routine inventory search without probable cause. The car was taken to a police garage and there impounded before it was searched. As this court stated in *People* v. *Laursen* (1972) 8 Cal.3d 192 [104 Cal.Rptr. 425, 501 P.2d 1145], "We discern no inconvenience or invasion of defendant's rights which further infringed any constitutional prohibition by the fact that the vehicle was removed from the scene of the crime to an impound garage beyond that which would have resulted had a warrant authorizing the impound and search first been obtained." (P. 202.)

The search warrant directed to Prager Jewelers for specified jewelry removed by Emslie from Frontier Hotel room 5005 and Sahara Hotel

room 167 was based upon an affidavit prepared by Detective Blumberg after search of the car and after interviewing Emslie. The affidavit was not, therefore, based upon "illegally seized evidence" but upon information which was the fruit of a proper search and interview.

There was sufficient evidence, apart from the evidence obtained in search of the car, to justify the disciplinary hearing. There was evidence that Emslie took a hotel key which did not belong to him under circumstances which were highly suspicious (previous thefts from hotel rooms, keys to which had been taken from swimming pool areas while the occupants were swimming); he had keys to seven hotel rooms besides his own when he was arrested; he denied possession of a car, but a car rented by him in California was found in the parking lot of the hotel where he was apprehended and he had the car keys in his possession; and he had no credible explanation for the 29 items of personal property found in his room, including the Bitterman credit cards and driver's license.

■ Dismissal of the Nevada criminal charges did not preclude the State Bar of California from investigating or from basing its disciplinary proceedings upon the same acts charged in the criminal action. The State Bar is required to investigate any charge of serious misconduct against a member of the State Bar (Rules of Procedure, rules 19.1, 21). ■ The chairman correctly ruled that the committee had a duty to consider all admissible evidence; that it was not restricted by reason of the fact that the statute of limitations had not yet expired in Nevada on the criminal charges; that any witness was free to go to the Nevada authorities; and that Emslie was not placed "in double jeopardy" by the disciplinary proceedings. No jeopardy had attached in the Nevada proceeding at the time it was dismissed. ■ The State Bar disciplinary proceeding is not a criminal action. (*Prime* v. *State Bar* (1941) 18 Cal.2d 56, 62 [112 P.2d 881].)

*Nature of State Bar Disciplinary Proceedings; Application of Exclusionary Rules Therein.*

■ The State Bar is a public corporation created by the Legislature (§ 6001) as an administrative arm of this court for the purpose of assisting in matters of admission and discipline of attorneys. (*Preston* v. *State Bar* (1946) 28 Cal.2d 643, 650 [171 P.2d 435].) This method is "alternative and cumulative" to the inherent power of this court in such matters. (§ 6075; *Chronicle Pub. Co.* v. *Superior Court (S.F.)* (1960) 54 Cal.2d 548, 563 [7 Cal.Rptr. 109, 354 P.2d 637]; *Johnson* v. *State Bar* (1935) 4 Cal.2d 744, 758 [52 P.2d 928].) This court retains its inherent power to

control such disciplinary procedure at any step. (*Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 301 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310].)

 "The State Bar Act is designed to provide a procedure whereby those attorneys at law who prove recreant to their trust may be removed from the ranks of the profession. The public, as well as the legal profession and the courts must be protected from those who do not measure up to their responsibilities. Government largely depends upon the stability of the courts and, to a considerable extent, upon the integrity of the members of the legal profession. The purpose of disbarment proceedings is not to punish the individual but to determine whether the attorney should continue in that capacity" (*Dudney* v. *State Bar* (1937) 8 Cal.2d 555, 563 [66 P.2d 1199]); "in short to reform the offender or else remove him from practice" (*Hill* v. *State Bar* (1935) 2 Cal.2d 622, 625 [42 P.2d 629]). The principal objective is to protect the court and the public from the official ministrations of persons unfit to practice. (*Black* v. *State Bar* (1972) 7 Cal.3d 676, 688 [103 Cal.Rptr. 288, 499 P.2d 968]; *Zitny* v. *State Bar* (1966) 64 Cal.2d 787, 790-791, fn. 1 [51 Cal.Rptr. 825, 415 P.2d 521].)

The State Bar disciplinary board is empowered by the Legislature to act in the place and stead of the board of governors in the determination of disciplinary proceedings (rule 80, Rules of Procedure); preliminary investigation and hearing upon any notice to show cause which is issued must be conducted by a local committee in the county where the person being investigated has his place of residence or principal office for the practice of law (rule 10).

The Legislature has specifically enacted that "No law of this State restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies, or classes thereof . . . shall be applicable to the State Bar, unless the Legislature expressly so declares" (§ 6001). The legislative standards are but *minimum* standards which must be applied; this court retains inherent power to require additional standards if it is not satisfied that the legislative qualifications are sufficient (*In re Lavine* (1935) 2 Cal.2d 324, 328 [41 P.2d 161]).

 State Bar disciplinary proceedings are administrative but of a nature of their own. (*Johnson* v. *State Bar* (1935) 4 Cal.2d 744, 759 [52 P.2d 928]; *Matter of Danford* (1910) 157 Cal. 425, 430 [108 P. 322].) It has been repeatedly held that they are not governed by the rules of procedure governing civil or criminal litigation (*Lewis* v. *State Bar* (1973) 9

Cal.3d 704, 713-714 [108 Cal.Rptr. 821, 511 P.2d 1173]; *Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 916 [101 Cal.Rptr. 369, 495 P.2d 1289]) although such rules have been invoked by the courts when necessary to insure administrative due process. (*Werner* v. *State Bar* (1944) 24 Cal. 2d 611, 615 [150 P.2d 892].) The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 75 [64 Cal.Rptr. 785, 435 P.2d 553].) The Rules of Procedure enacted by the State Bar provide a wide array of procedural safeguards in addition to those otherwise provided by statute or the courts. As hereinabove noted rule 14 provides that the Civil Discovery Act, as limited or adapted by these rules, constitutes the rules of discovery in State Bar disciplinary proceedings. Provision is made for notice, opportunity to be heard, opportunity to have witnesses subpoenaed or their depositions taken on behalf of respondent, opportunity to examine and cross-examine witnesses, for findings of fact and conclusions thereon to be made by the local committee, for the accused attorney to apply to the board for the presentation of additional evidence or for a hearing de novo, for independent review of the record and independent determination by the board and by this court; for the board to take lesser disciplinary action on its own authority but with provision for review by this court; and for the final determination to be made by this court of suspension, disbarment, or reinstatement of a disbarred attorney. ██ ██ While guilt need not be proved beyond a reasonable doubt it must be established by convincing proof and to a reasonable certainty (*Furman* v. *State Bar* (1938) 12 Cal.2d 212, 229-230 [83 P.2d 12]) and all reasonable doubts must be resolved in favor of the accused. (*Himmel* v. *State Bar, supra,* 4 Cal.3d 786, 793-794.)

██ The question whether a particular rule of the civil or criminal law, not otherwise provided for by statute or categorically established by case law, should be applied in State Bar disciplinary matters to assure administrative due process, must be determined upon the facts presented in a particular case. The question has been directly raised in this proceeding whether the exclusionary rules of the criminal law should be applied herein. While we have concluded from our independent review of the record that there was no unlawful search or seizure the issue is of sufficient importance to require consideration here.

██ The exclusionary rules of the criminal law are based upon the principle that the state should not profit by its own wrong in using in criminal proceedings evidence obtained by unconstitutional methods; and

upon the premise that by denying any profit to law enforcement officers who may be tempted to use illegal methods to obtain incriminating evidence (i.e., by not allowing the use of such evidence at the trial), the rules will have a deterrent effect. (See *People* v. *Moore* (1968) 69 Cal.2d 674, 682 [72 Cal.Rptr. 800, 446 P.2d 800]; *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 763-764 [44 Cal.Rptr. 313, 401 P.2d 921].)

We sanctioned the use of the exclusionary rules in a *civil* proceeding for forfeiture of a car used in unlawful transportation of marijuana in *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92 [41 Cal.Rptr. 290, 396 P.2d 706]. We there held "Whatever the label which may be attached to the proceeding, it is apparent that the *purpose of the forfeiture is deterrent in nature and that there is a close identity to the aims and objectives of criminal law enforcement.* On policy the same exclusionary rules should apply to improper state conduct whether the proceeding contemplates the deprivation of one's liberty or property" (pp. 96-97). (Italics added.)

Deterrence and close identity to the aims and objectives of criminal law enforcement are not the only tests to be applied. In *People* v. *Moore, supra,* 69 Cal.2d 674, we found a close identity between a civil narcotic addict commitment proceeding and the aims and objectives of criminal law enforcement and the deterrent effect of applying the exclusionary rules, and we held that the rules were there applicable. However, we also held that "Whether any particular rule of criminal practice should be applied . . . depends upon consideration of the relationship of the policy underlying the rule to the proceeding." (Pp. 681-682.)

We applied this balancing test in *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], in considering the nature of an administrative proceeding—a parole revocation by the Adult Authority. One of the bases for revocation was a narcotics conviction received while the prisoner was on parole. After revocation the conviction was reversed on grounds of unlawful search and seizure of the evidence upon which it was based and because a confession was obtained in violation of the *Dorado-Miranda* rules. (*People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *Miranda* v. *Arizona, supra,* 384 U.S. 436.) We found that there was some identity between the revocation proceedings and the aims and objectives of criminal law enforcement but we found practically no deterrent effect could be anticipated by the application of the exclusionary rules to that proceeding. A "bungling police officer" who might be tempted to use unlawful means to obtain evidence to be used in a criminal trial might not even consider the effect of such illegality upon a

parole revocation proceeding; in *Martinez* the police did not even know that the suspect was a parolee.

In *Martinez* we weighed the nature of the proceeding with the high social cost that might result from an extension of the exclusionary rules thereto, and concluded that the social consequences could be disastrous. We recognized that the Adult Authority has a delicate duty to decide when a convicted offender can be safely allowed to return to and remain in society, that it is in a different posture than the court which decided his original guilt, and that to blind the authority to relevant facts in this special context might outweigh the competing considerations of a problematical gain in deterrence. However, we limited our decision, that the general Fourth Amendment and *Dorado* exclusionary rules are not applicable to Adult Authority proceedings, to the facts before us in that particular case, and specifically cautioned that if we were presented with an instance in which the authority considered evidence obtained under circumstances which "shocked the conscience" we might well conclude "that the constitutional demands of due process could not countenance *any* governmental use of such evidence, even by the Adult Authority" (1 Cal.3d at pp. 650-651).

 The mere fact that rules of evidence are relaxed in an administrative proceeding has no bearing on the applicability of the exclusionary rules. (*In re Martinez, supra,* 1 Cal.3d at p. 651 and fn. 9.) The same rationale applies in attorney disciplinary proceedings, where only the rules of evidence prescribed by state law or required by concepts of fundamental due process must be applied.

The holder of a license to practice law is subject to suspension or disbarment for wilful breach of the rules of professional conduct or laws warranting disbarment, suspension or other discipline (§ 6078; rule 1, Rules of Professional Conduct, foll. § 6076). The license may not be arbitrarily taken away and the holder is entitled to procedural due process in any disciplinary proceedings relating thereto. (*Woodard* v. *State Bar* (1940) 16 Cal.2d 755, 757 [108 P.2d 407].)

In an administrative proceeding to revoke a medical license the Board of Medical Examiners held that the exclusionary rules of the criminal law applied and excluded evidence on that ground. The Court of Appeal found that in that case there was no unlawful search and seizure but it assumed, on the basis of the decision of this court in *People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, that such rules would apply "to an administrative hearing where the proceeding contemplates the deprivation

of a license which is recognized as a property right, as is the right to practice medicine . . . ." citing *Hewitt* v. *Board of Medical Examiners* (1906) 148 Cal. 590, 592 [84 P. 39]. (*Elder* v. *Bd. of Medical Examiners* (1966) 241 Cal.App.2d 246 [50 Cal.Rptr. 304].)

 While we denied hearing in that case such denial is not to be regarded as expressing approval of a categorical rule that the exclusionary rules of the criminal law apply in license revocation proceedings merely because a penalty is involved. (See *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865].)

The United States Supreme Court held in *In re Ruffalo* (1968) 390 U.S. 544, 550-551 [20 L.Ed.2d 117, 121-123, 88 S.Ct. 1222], that where administrative proceedings contemplate the deprivation of a license to practice one's profession they are adversary proceedings of a quasi-criminal nature and procedural due process must be afforded the licensee. In *Black* v. *State Bar, supra,* 7 Cal.3d 676, 687-688, we held that *Ruffalo* does not require the holding that the federal constitutional privilege against self-incrimination be applied in such proceedings, because even though the penalty may be disbarment the penalty is designed to protect the court and the public, not to punish the individual. However, in another administrative license revocation proceeding we held that the defense of entrapment must be permitted because of the social policy that the state has no business fostering crime, and that the state objective of ferreting out physicians who engage in illegal drug traffic is not furthered by entrapment of a doctor who would otherwise not have engaged in such traffic. (*Patty* v. *Board of Medical Examiners* (1973) 9 Cal.3d 356 [107 Cal.Rptr. 473, 508 P.2d 1121].)

In applying the exclusionary rules to attorney disciplinary proceedings we find practically no deterrent effect upon any law enforcement officer who might be tempted to use unconstitutional methods to obtain evidence for use in a criminal trial. Here, as in the situation in *Martinez* the officer might not even know that the suspect was an attorney and might not even contemplate the consequences of an arrest or conviction upon professional disciplinary proceedings.

We find that a balancing test must be applied in such proceedings and consideration must be given to the social consequences of applying the exclusionary rules and to the effect thereof on the integrity of the judicial process. While we hold that the exclusionary rules are not part of administrative due process in State Bar disciplinary proceedings we do not intimate that circumstances could not be presented under which the

constitutional demands of due process could not countenance use of evidence obtained by unlawful means in a proceeding conducted by such governmental agency or administrative arm of this court. The application of such rules must be worked out on a case-by-case basis in this and other license revocation proceedings.

 Our independent review of the record herein indicates that Emslie committed acts in the nature of burglary and grand theft, that the commission of these acts constitutes moral turpitude and dishonesty on his part, and that the protection of the courts and of the integrity of the legal profession requires that he should be disbarred.

 While the present proceeding was pending before this court, but before a written opinion could be filed, the order suspending Emslie from practice of law, issued in Bar Misc. 3442, expired. Exercising the inherent power of this court, and based upon the information herein before us, a new order of suspension was entered pending the filing of this opinion. (§ 6107; see *In re Hallinan* (1954) 43 Cal.2d 243, 253-254 [272 P.2d 768].)

It is now ordered that William G. Emslie be disbarred from the practice of law in this state, and that his name be stricken from the roll of attorneys, effective 30 days after the filing of this opinion. It is also ordered that Emslie comply with the provisions of rule 955, paragraph (a), California Rules of Court within 30 days of the effective date of this order and file an affidavit with the clerk of this court as provided in paragraph (c) of the rule within 60 days of the effective date of the order showing his compliance with said order.