[No. G037778. Fourth Dist., Div. Three. June 26, 2007.]

SUNG JIN PARK, Plaintiff and Appellant, v.
GEORGE VALVERDE, as Director, etc., Defendant and Respondent.

**COUNSEL**

Law Offices of Brian W. Toppila and Brian W. Toppila for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Jacob A. Appelsmith, Assistant Attorney General, and Michael E. Whitaker, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**MOORE, J.**—Sung Jin Park (Park) was pulled over in a traffic stop because outdated police records erroneously reflected that the vehicle he was driving was stolen. The police officer then observed that Park showed signs of intoxication, and ultimately arrested him for drunk driving. The Department of Motor Vehicles (DMV) suspended Park's license for a year, because of a prior drunk driving infraction on his record.

Park claims that the DMV, in its administrative proceedings, and the trial court, on review of those administrative proceedings, both erred in failing to apply the exclusionary rule to suppress the evidence of intoxication. According to Park, *People v. Ramirez* (1983) 34 Cal.3d 541 [194 Cal.Rptr. 454, 668 P.2d 761] (*Ramirez*), requires that such evidence be suppressed when the police rely on incorrect information in police records. *Ramirez* has to do with the application of the exclusionary rule in criminal proceedings, not administrative proceedings. We see no reason, on the facts of this case, to extend the application of the exclusionary rule as expressed in *Ramirez* to the DMV's administrative license suspension proceedings. We affirm the judgment.

I

FACTS

On January 27, 2006, Officer Chris LeFave of the Fullerton Police Department observed Park operating a motor vehicle on the roadway. Officer LeFave ran a license plate check on the vehicle Park was driving and obtained information indicating that the vehicle could be stolen. Officer LeFave then stopped Park, who was detained in handcuffs until it was determined whether or not the vehicle was in fact stolen. Officer LeFave ascertained that the vehicle, which belonged to Park, had been stolen in February of 2005, but had been recovered and returned to Park by the Norwalk Sheriff's Station.

Although the stolen vehicle issue had been resolved favorably to Park, a question arose as to whether Park was intoxicated. Officer LeFave observed that Park had bloodshot and watery eyes, an unsteady gait, and the odor of alcohol. Park failed a field sobriety test. He admitted that he had been drinking. Officer LeFave concluded that Park was intoxicated and arrested him for drunk driving (Veh. Code, § 23152). More than an hour after the initial stop, Park submitted to a breathalyzer test, that showed a blood-alcohol level of .12 percent. Officer LeFave issued to Park an administrative per se suspension/revocation order and temporary driver's license. (Veh. Code, §§ 13353.2, 13382.)

In subsequent criminal proceedings, Park moved to suppress all evidence obtained or seized in connection with the traffic stop, because the stop was based on outdated police information to the effect that the vehicle was stolen. He cited *Ramirez, supra,* 34 Cal.3d 541, in support of his position. The court dismissed the action against Park.

The DMV conducted an administrative review of Park's driving privileges. Park again asserted that, pursuant to *Ramirez, supra,* 34 Cal.3d 541, the exclusionary rule should apply. The DMV suspended Park's driver's license for one year.

Park then filed a Code of Civil Procedure section 1094.5 petition for a writ of mandate, again raising the issue of the application of *Ramirez, supra,* 34 Cal.3d 541. The court denied the writ petition. Park appeals.

## II

## DISCUSSION

### A. *Standard of Review:*

Because the application of *Ramirez, supra,* 34 Cal.3d 541, to the facts before us presents a question of law, we review the matter de novo. (*Roze v. Department of Motor Vehicles* (2006) 141 Cal.App.4th 1176, 1184 [46 Cal.Rptr.3d 829].)

### B. *Exclusionary Rule in Criminal Proceedings—Inaccurate Police Records:*

In *Ramirez, supra,* 34 Cal.3d 541, a police officer observed two men, the defendant and a friend, standing in front of a closed store at 12:45 a.m. (*Id.* at p. 543.) There had been numerous burglaries in the vicinity and the police officer felt something was suspicious. He approached the men, questioned them, and frisked them. Although he found no weapon on either man, the police officer radioed for a warrant check. The police computer system revealed an outstanding warrant for the arrest of the defendant for possession of phencyclidine (PCP). (*Ibid.*) The police officer arrested the defendant and released the other man. (*Id.* at p. 544.) During a booking search at the jail, it was discovered that the defendant was then in possession of PCP. (*Ibid.*)

As it turned out, the police computer records were in error. The warrant upon which the police officer relied had been recalled. The defendant moved to suppress the PCP evidence obtained during the booking search. (*Ramirez, supra,* 34 Cal.3d at pp. 543–544.) He argued that his arrest and the booking search were unlawful since the warrant in question had been recalled and there was no independent probable cause to arrest him. (*Id.* at p. 544.) The court agreed that the arrest was unlawful and the evidence obtained during the booking search should have been suppressed. (*Ibid.*)

It explained: "In the case of an arrest on a recalled warrant, . . . the arresting officer is pursuing a course of conduct mandated by fellow law enforcement officials. It is settled that an officer in the field may rely on information communicated to him by fellow officers to establish probable cause to arrest. [Citation.] However, if we impute to the arresting officer the collective knowledge of law enforcement agencies for the purpose of establishing probable cause, we must also charge him with knowledge of information exonerating a suspect formerly wanted in connection with a crime. The 'fellow officer' or 'collective knowledge' rule cannot function solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information. [Citation.] . . . Because the recall of the warrant was, or should have been, within the 'collective knowledge' of the police, we cannot permit the arresting officer to rely with impunity on his fellow officers' errors of omission, but must impute their accurate knowledge to him. [¶] [T]his result is consistent with the deterrence goal of the exclusionary rule. In this case, of course, we focus not on the actions of the arresting officer but on the conduct of law enforcement generally. Suppressing the fruits of an arrest made on a recalled warrant will deter further misuse of the computerized criminal information systems and foster more diligent maintenance of accurate and current records." (*Ramirez, supra*, 34 Cal.3d at pp. 546–547.)

## C. *Extension of Rule to DMV Administrative Proceedings:*

In the case before us, Park insists that the negligent recordkeeping of the Norwalk Sheriff's Station and/or the Fullerton Police Department was to blame. He concludes, therefore, that the exclusionary rule of *Ramirez, supra,* 34 Cal.3d 541, must be applied. Park downplays the fact that the rule was indeed applied to his benefit. It was applied in the criminal proceedings against him.

What Park wants is for us to extend the exclusionary rule of *Ramirez, supra,* 34 Cal.3d 541, outside of the context of criminal proceedings, to DMV administrative proceedings. However, were we to do so, the underlying purpose of the exclusionary rule as applied in *Ramirez, supra*, 34 Cal.3d 541, would not be served. The *Ramirez* court stressed that one of the goals of the exclusionary rule is the deterrence of misconduct by law enforcement personnel. (*Id.* at p. 546.) Park has not explained how excluding evidence in DMV administrative proceedings would punish or deter police misconduct. He also

has not shown that the DMV itself engaged in any misconduct of a type that should be deterred in the future. In fact, Park says emphatically that we "know[] full well" that the source of the misinformation "was not the DMV."

■ "The exclusionary rule has long been a part of . . . constitutional procedural due process in criminal cases. [Citations.]" (*Governing Board v. Metcalf* (1974) 36 Cal.App.3d 546, 548 [111 Cal.Rptr. 724].) It "is rarely applied in civil actions in the absence of statutory authorization, although government agencies may be involved, and even though the government itself has unlawfully seized the evidence. [Citations.]" (*Gordon J. v. Santa Ana Unified School Dist.* (1984) 162 Cal.App.3d 530, 542–543 [208 Cal.Rptr. 657], fn. omitted.) Generally speaking, the exclusionary rule is extended to civil proceedings only when the "proceedings so closely [identify] with the aims of criminal prosecution as to be deemed 'quasi-criminal.' [Citations.]" (*In re Lance W.* (1985) 37 Cal.3d 873, 892 [210 Cal.Rptr. 631, 694 P.2d 744].) ■ However, the "suspension of an individual's driver's license is a civil remedy that is not penal in nature. [Citation.]" (*Foster v. Snyder* (1999) 76 Cal.App.4th 264, 271 [90 Cal.Rptr.2d 207].)

The Supreme Court contrasted criminal drunk driving proceedings and DMV civil administrative proceedings, and their underlying purposes, in *Gikas v. Zolin* (1993) 6 Cal.4th 841 [25 Cal.Rptr.2d 500, 863 P.2d 745] (*Gikas*). As the *Gikas* court stated: "It is a criminal offense to drive while under the influence of alcohol or a drug, or to drive with 0.08 percent or more, by weight, of alcohol in the blood. [Citations.] In addition to criminal sanctions, the Legislature has established administrative procedures whereby the DMV may suspend a person's driver's license for driving under the influence or with a specified blood-alcohol level." (*Id.* at p. 846, fn. omitted.) "The express legislative purposes of the administrative suspension procedure are: (1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions. [Citations.]" (*Id.* at p. 847.)

The *Gikas* court continued: "The legislative history reveals that '[t]he need for the administrative per se statutes arose from the fact that "[t]he legal process leading to imposition of a suspension sometimes [took] years from the time of arrest." [Citation.] "Many drivers with high chemical test results fail[ed] to have sanctions taken against their driving privilege because of

reduction in charges as the result of 'plea-bargaining' or pre-trial diversion programs." [Citation.] In enacting the administrative per se law, the Legislature intended to establish "an expedited driver's license suspension system" [citation] that would "reduce court delays. The suspension will be swift and certain and will be more effective as a deterrent . . . ." [Citation.]' [Citation.] [¶] '[T]he Legislature, in enacting these statutes, contemplated two processes-one involving court proceedings and criminal in nature, the other involving administrative proceedings and civil in nature; and that these processes are, for the most part, intended to operate independently of each other and to provide for different dispositions.' [Citation.]" (*Gikas, supra*, 6 Cal.4th at p. 847.)

The *Gikas* court emphasized that one of the purposes of the administrative review procedure "is to make the highways of California safer. 'Deterring drunk driving and identifying and removing drunk drivers from the roadways undeniably serves a highly important governmental interest. . . . Stopping the carnage wrought on California highways by drunk drivers is a concern the importance of which is difficult to overestimate.' [Citation.]" (*Gikas, supra*, 6 Cal.4th at p. 856.)

■ In *Gikas, supra*, 6 Cal.4th 841, a driver was arrested for drunk driving. He had a blood-alcohol level of .10 percent. In the criminal action, the driver moved to suppress evidence. The municipal court granted the motion, having concluded that the original stop and detention were unreasonable. (*Id.* at p. 845.) One of the issues the *Gikas* court addressed was whether Penal Code section 1538.5, subdivision (d) made evidence suppressed in the criminal action inadmissible in the DMV administrative license suspension proceeding.[1] (*Gikas*, at p. 857.) The court answered that question in the negative. (*Id.* at pp. 858–859.) It stated: "We find nothing in Penal Code section 1538.5, subdivision (d), or the cases construing it suggesting the exclusionary rule must apply whenever there has been a suppression hearing in some criminal case." (*Id.* at p. 859.) The court also commented: "It is settled that the exclusionary rule does not apply to all administrative hearings. (E.g., *Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 229 [113 Cal.Rptr. 175, 520 P.2d 991] . . . .)" (*Gikas, supra*, 6 Cal.4th at p. 859.)

While the Supreme Court, in deciding in *Gikas, supra*, 6 Cal.4th 841, did not quite answer the question whether the exclusionary rule ordinarily applies in DMV administrative proceedings, its decisions in *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734] (*Martinez*) and *Emslie v. State*

---

[1] Penal Code section 1538.5, subdivision (d) states: "If a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant at any trial or other hearing unless further proceedings authorized by this section, Section 871.5, 1238, or 1466 are utilized by the people."

*Bar, supra*, 11 Cal.3d 210 (*Emslie*) provide additional guidance. In *Martinez, supra*, 1 Cal.3d 641, a prisoner asserted that the Adult Authority had revoked his parole without adequate cause. More specifically, he claimed that the revocation was based on unconstitutionally obtained evidence. (*Id.* at p. 644.) The *Martinez* court addressed whether the Adult Authority, in exercising its authority over the parole system, could consider evidence obtained through unconstitutional means. (*Id.* at p. 646.) It stated that in order to determine the applicability of the exclusionary rules at issue, it needed to "examine both the policies underlying the rules *and* the purposes and nature of the proceeding." (*Id.* at p. 648.)

In performing its analysis, the *Martinez* court first noted the primary purpose of the exclusionary rule—to deter unconstitutional law enforcement methods. (*Martinez, supra*, 1 Cal.3d at p. 648.) It then stated: "Although we recognize that theoretically the exclusion of the products of illegal searches and interrogations from Adult Authority proceedings would supplement the deterrent force of the criminal trial exclusionary rules, we must also consider the unique nature and responsibilities of the Adult Authority and the extremely high costs which the expanded application of the exclusionary rule would entail in this context. Our desire to preserve legalistic symmetry cannot obscure the necessity of examining the practical merits of the underlying competing societal interests actually at stake. We must be ever-cautious of becoming 'so overly concerned with "the internal perfecting of [the law's] own categories" as to forget the goals of the [judicial] enterprise.' [Citation.] [¶] We believe, at this time, that the incremental deterrent effect that will realistically be achieved by shielding the Adult Authority from illegally procured evidence is slight . . . ." (*Id.* at p. 649.) The court held that the Adult Authority, in the matter before it, could consider all the evidence presented. (*Id.* at pp. 650–651.)

In so doing, the *Martinez* court further explained: "To blind the authority to relevant facts in this special context is to incur a risk of danger to the public which, at least as of this date, outweighs the competing considerations of a problematical gain in deterrence. We thus conclude that at this time the . . . exclusionary rules are not applicable to Adult Authority proceedings." (*Martinez, supra*, 1 Cal.3d at p. 650.) It then cautioned that, on extreme facts, such as a coerced confession or egregious police conduct that would shock the conscience, it might reach a different conclusion. (*Id.* at pp. 650–651.) The court also cautioned against the rote application of its decision to other administrative proceedings. It said: "In declining to apply the exclusionary

rules to Adult Authority proceedings, we do not, of course, intimate that these exclusionary rules are not applicable to other administrative proceedings. [Citations.] In other circumstances, the consequences of excluding some relevant information may not be as dire as they are in the Adult Authority context, and thus our evaluation of the appropriateness of applying the exclusionary rule may well be altered." (*Id.* at p. 651, fn. omitted.)

The Supreme Court applied a balancing test again, in *Emslie, supra,* 11 Cal.3d 210. (*Id.* at pp. 227, 229.) There, hotel security officers apprehended a man who had been observed picking up a key from the swimming pool area of a hotel at which he was not registered. The security officers then determined that he had eight hotel room keys in his pockets. The sheriff's office was called, and it was ultimately determined that the man was in possession of stolen property. A criminal complaint was filed against the man in Las Vegas, where the hotel was located. The complaint was eventually dismissed. (*Id.* at pp. 217–218.)

As it turns out, the purported thief was a lawyer with a history of disciplinary proceedings before the State Bar of California. (*Emslie, supra,* 11 Cal.3d at p. 217.) Further disciplinary proceedings were commenced against him, arising out of the purported hotel burglaries, to determine whether he should be disbarred due to acts of moral turpitude and dishonesty. (*Id.* at p. 216.) He moved to suppress evidence in the disciplinary proceedings on the grounds of illegal search and seizure and illegal arrest. (*Id.* at p. 219.) The motion to suppress was denied. (*Id.* at p. 222.)

The *Emslie* court addressed whether the exclusionary rule was applicable to the State Bar disciplinary proceedings. (*Emslie, supra,* 11 Cal.3d at p. 226.) At the outset, the court indicated that the State Bar proceedings were not criminal in nature. (*Id.* at p. 225.) It also stated that whether a particular rule of criminal law should be applied in State Bar disciplinary proceedings, in order to assure administrative due process, was a question to be determined upon the facts of each case. (*Id.* at p. 226.)

▇ In contemplating the matter at hand, the *Emslie* court again observed: "The exclusionary rules of the criminal law are based upon the principle that the state should not profit by its own wrong in using in criminal proceedings evidence obtained by unconstitutional methods; and upon the premise that by denying any profit to law enforcement officers who may be tempted to use illegal methods to obtain incriminating evidence (i.e., by not allowing the use

of such evidence at the trial), the rules will have a deterrent effect. [Citations.]" (*Emslie, supra*, 11 Cal.3d at pp. 226–227.) The court concluded: "In applying the exclusionary rules to attorney disciplinary proceedings we find practically no deterrent effect upon any law enforcement officer who might be tempted to use unconstitutional methods to obtain evidence for use in a criminal trial. . . . [¶] We find that a balancing test must be applied in such proceedings and consideration must be given to the social consequences of applying the exclusionary rules and to the effect thereof on the integrity of the judicial process. While we hold that the exclusionary rules are not part of administrative due process in State Bar disciplinary proceedings we do not intimate that circumstances could not be presented under which the constitutional demands of due process could not countenance use of evidence obtained by unlawful means in a proceeding conducted by such governmental agency or administrative arm of this court. The application of such rules must be worked out on a case-by-case basis in this and other license revocation proceedings." (*Id.* at pp. 229–230.)

Applying the balancing tests of *Martinez, supra*, 1 Cal.3d 641, and *Emslie, supra*, 11 Cal.3d 210, to the case before us, we conclude that the exclusionary rule is inapplicable to the DMV administrative proceedings on these facts. On the one hand, we acknowledge that the application of the exclusionary rule, as expressed in *Ramirez, supra*, 34 Cal.3d 541, to DMV administrative proceedings could theoretically provide a supplemental basis for deterring law enforcement officials from maintaining inaccurate stolen vehicle records. On the other hand, we must also consider the responsibility of the DMV to get drunk drivers off the road for the protection of society at large. (*Lake v. Reed* (1997) 16 Cal.4th 448, 454–455, 462 [65 Cal.Rptr.2d 860, 940 P.2d 311].) We cannot ignore the fact that the criminal drunk driving proceedings and the DMV administrative proceedings serve different primary purposes—one to punish drunk drivers and one to get them off the streets. (*Gordon J. v. Santa Ana Unified School Dist., supra*, 162 Cal.App.3d at p. 546.) The suppression of evidence in the context of criminal proceedings, as was done here, should provide adequate deterrence of wrongful police conduct in recordkeeping. Although the suppression of evidence in the DMV administrative proceedings as well could provide some supplemental deterrent effect, it would only be at the expense of protecting the public from the drunk driver, and indeed, protecting the drunk driver from himself. In order to permit the primary purpose of the DMV administrative proceedings to be served, we conclude that the suppression of evidence in those proceedings is not required in this case. There is no indication of any egregious conduct, such as the deliberate failure to update the stolen vehicle records in order to put Park in jeopardy, that would support the application of the exclusionary rule in this instance.

## III

## DISPOSITION

The judgment is affirmed. The DMV shall recover its costs on appeal.

Sills, P. J., and Aronson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 25, 2007, S154065.