94 So.2d 730 (1957)
The STATE of Florida, ex rel. The FLORIDA BAR, Complainant,
v.
Evan T. EVANS, Respondent.
Supreme Court of Florida, En Banc.
February 6, 1957.
Rehearing Denied April 24, 1957.
*731 Delbridge L. Gibbs and John S. Duss, III, Jacksonville, for Florida Bar, complainant.
L.J. Cushman, Miami, for respondent.
THORNAL, Justice.
In accordance with the provisions of Articles X and XI of the Integration Rule of The Florida Bar as such rule existed prior to December 6, 1955, the Board of Governors of The Florida Bar has filed in this Court its recommendation that the respondent Evan T. Evans be disbarred upon stated grounds hereafter mentioned.
The matter comes on for consideration upon a petition of the respondent Evans asking us to review, revise, modify or deny the findings and recommendations of said Board of Governors.
On September 6, 1955, The Florida Bar filed in this Court its complaint against respondent Evans charging that: (a) he had been convicted of an infamous crime within the meaning of Section 454.18, Florida Statutes 1953, F.S.A., and that pursuant to said section he is not entitled to practice law; (b) he was guilty of conduct in the practice of his profession as an attorney at law in violation of Canon 30, Rule B, Section II, Code of Ethics, *732 adopted by this Court January 27, 1941, 31 F.S.A.; (c) he was guilty of acts forbidden or prohibited by law within the meaning of Canon 32, Rule B, Section II, Code of Ethics, supra; and (d) he was guilty of professional misconduct within the meaning and intent of Articles X and XI of the Integration Rule of The Florida Bar, adopted by this Court March 4, 1950, as Amended.
Thereafter, a Referee was appointed by this Court to hear and transcribe the evidence to be offered and to submit to the Board of Governors his report together with his recommendations and findings.
At the hearing before the Referee, The Florida Bar established that Mr. Evans had been indicted by a Grand Jury of the United States District Court of the Southern District of Florida for filing false and fraudulent income tax returns for the calendar years 1945 and 1946. It was shown that to this indictment he pleaded nolo contendere. Pursuant to this plea he was on June 25, 1952 convicted and adjudged guilty of filing false and fraudulent income tax returns in violation of Title 26 United States Code, Section 145(b). It was further shown that this judgment of conviction was never appealed, modified, revoked, rescinded or set aside. By reason of the foregoing The Bar contended that the respondent was guilty of the charges leveled against him by the complaint.
In defense of his position before the Referee, the respondent, by competent evidence which was not disputed, established that during the year 1950 and repeatedly thereafter he had suffered severe heart attacks (angina pectoris) which for all practical purposes totally incapacitated him; that he pleaded nolo contendere to the income tax charges solely and only because his doctors advised him that if he undertook any extensive defense against the charges his life would be in danger; and finally that the plea of nolo contendere cannot be considered as an admission of guilt in any proceeding other than the immediate criminal proceeding in which the plea is submitted. In addition Mr. Evans offered the testimony of numerous reputable lawyers who stated that he enjoyed a good reputation in his community for honesty and integrity.
The Referee found that the proof offered by The Bar was sufficient to establish a conviction of an infamous crime within the meaning of Section 454.18, Florida Statutes, F.S.A.; that such proof justified disciplinary action under Articles X and XI of the Integration Rule; that the offense charged was an isolated offense and that the respondent enjoyed a good reputation for honesty and fair dealings in the community in which he resides. The Referee was of the view that Canon 30, Rule B, Section II, Code of Ethics, applies solely to conduct of a lawyer in his professional affairs but has no relation to his private conduct and, therefore, was not applicable. He also found that Canon 32, Rule B, Section II, Code of Ethics, does not purport to prescribe a rule of conduct or to define a ground for disbarment. The conclusion of the Referee was that the respondent should be disciplined by virtue of the provisions of Section 454.18, Florida Statutes, F.S.A. He recommended that respondent be suspended from the practice of law for a period of two years.
The report of the Referee was thereupon filed with and considered by the Board of Governors of The Florida Bar which thereupon submitted its recommendations to this Court. The Board of Governors approved the finding that respondent had been convicted of an infamous crime condemned by Section 454.18, Florida Statutes, F.S.A.; it disapproved the finding that Canon 32, Rule B, Section II, Code of Ethics, was inapplicable and, on the contrary, found this Canon to be applicable. The recommendation of a two-year suspension was disapproved and in lieu thereof the Board of Governors recommended disbarment. Respondent petitions for a review of this recommendation.
*733 Section 454.18, Florida Statutes, F.S.A. reads as follows:
"No sheriff, or clerk of any court, or deputy of either, shall practice in this state, nor shall any person not of good moral character, or who has been convicted of an infamous crime be entitled to practice. But no person shall be denied the right to practice on account of sex, race or color. And any person, whether an attorney or not, or whether within the exceptions mentioned above or not, may conduct his own cause in any court of this state, or before any public board, committee, or officer, subject to the lawful rules and discipline of such court, board, committee or officer."
Canon 32, Rule B, Section II, of the Code of Ethics, adopted by this Court on January 27, 1941, 31 F.S.A. p. 784, is as follows:
"32. Any attorney who shall do or be guilty of any of the acts forbidden or prohibited by law or rules of court may be subject to disciplinary action by public or private reprimand, or by suspension from the practice of law, or by exclusion and disbarment therefrom."
It is the alleged violation of this statute and this prescribed rule of conduct that complainant asserts was sufficiently established to sustain the recommendation of disbarment.
The respondent Evans contends: (a) that the offense with which he was charged in the federal court was not an "infamous crime" within the contemplation of Section 454.18, Florida Statutes, F.S.A.; (b) that even if it were, his plea of nolo contendere was not an admission of guilt except as to that particular proceeding and cannot be asserted as evidence of his guilt in this proceeding; (c) Canon 32, Rule B, Section II, of the Code of Ethics, adopted January 27, 1941, merely prescribes a penalty but does not define a ground for disbarment; and (d) the sole evidence relied upon by The Bar, to wit: the indictment, the plea of nolo contendere and the judgment of conviction and guilt is insufficient to sustain disciplinary action in the absence of supporting evidence to establish the commission of a particular act showing the respondent to be unfit to engage in the practice of law. In other words, he asserts, that conviction of the offense charged on a plea of nolo contendere does not in and of itself prove the commission of an act sufficient to invoke the disciplinary authority of the Court under the Integration Rule.
The legal profession with admirable candor has recognized the need for a code of ethical conduct to prescribe the standards for the governance of itself. We find these standards in the Code of Ethics prescribed by this Court. 31 Florida Statutes Annotated, p. 765. The lawyer is an essential component of the administration of justice. A courtroom without a lawyer would be like a hospital without a doctor or a house of God without a spiritual guide. So it is that a lawyer is an officer of the Court. As such his conduct is subject to judicial supervision and scrutiny. Especially since the integration of The Florida Bar in 1950 the prescription of ethical standards, the designation of educational and moral requirements, and the exercise of supervisory jurisdiction are all peculiarly judicial functions. In more recent years the legislative branch of the government recognized this historic prerogative of the judicial branch when it adopted Chapter 29796, Law of 1955, F.S.A. §§ 454.021, 454.022, and when it proposed for approval the recent amendment to and revision of Section 5, Article 5, of the Florida Constitution, F.S.A. On November 6, 1956, the people of Florida themselves confirmed the fact when they overwhelmingly approved the revision of Section 5, Article 5, Florida Constitution. Section 23 of that amendment specifically provides that "the Supreme Court shall have exclusive jurisdiction over the admission *734 to the practice of law and the discipline of persons admitted." On the effective date of this amendment we will no longer recognize any legislative control on the subject of who may be admitted to the practice of law or any legislative determination on the subject of who must be or shall be disciplined. These will then be the exclusive functions of the judiciary. State ex rel. Florida Bar v. Murrell, Fla., 74 So.2d 221.
Section 454.18, Florida Statutes, F.S.A. originated as Section 18, Chapter 10175, Laws of 1925, which was the statute that established the former Florida Board of Bar Examiners. The key words are "* * * nor shall any person * * * who has been convicted of an infamous crime be entitled to practice."
Respondent contends that a wilful attempt to evade or defeat income taxes as condemned by Section 145(b), Title 26 United States Code, is not an "infamous crime" within the contemplation of this statute. Admittedly, by the terms of Section 145(b), supra, it is a federal felony calling for a fine up to $10,000 or imprisonment up to five years or both. It is asserted however that the offense is merely malum prohibitum not malum in se; that it involves no moral turpitude or vileness or baseness of character such as perjury, burglary or robbery; that fraud as such is not an essential element, and that one or all of the foregoing is an essential component of an "infamous crime." Numerous authorities are cited to support the contention. Respondent then concludes that he cannot be disciplined under the provisions of Section 454.18, Florida Statutes, F.S.A. We deem it unnecessary to undertake to belabor this point or pass on the question raised. We adopt this view because Canon 32, Rule B, Section II, Code of Ethics, appears adequate to cover the point. While we give due consideration to the provisions of Section 454.18, Florida Statutes, F.S.A., we are not concluded by its provisions. By Canon 32, supra, it is in part provided that "any attorney who shall do or be guilty of any of the acts forbidden or prohibited by law" may be subject to disciplinary action There can be no doubt here that Mr. Evans was adjudged guilty of an act forbidden by law, to wit: a violation of Section 145(b), Title 26 U.S.C. He was therefore subject to disciplinary action. See Chapter III, Legal Ethics by Henry S. Drinker; State ex rel. Florida Bar v. DeCarlo, order filed April 26, 1956; and State ex rel. Florida Bar v. Turner, order filed November 14, 1956. This leads us to the view that the Referee was in error in holding Canon 32, supra, inapplicable to the case before us.
As to the sufficiency of the evidence to sustain the alleged violation of Canon 32, respondent asserts that the judgment of conviction and guilt in the federal court, standing alone, was inadequate. He relies heavily on Branch v. State, 99 Fla. 444, 128 So. 487, 488, to support him. We do not agree that the case is controlling. That case turned on the proposition that the accused attorney was not allowed to testify as to "the facts and circumstances leading up to" the criminal assault of which he had been convicted. Moreover, a careful examination of the case will reveal that three of the then six justices of the Court were of the view that the criminal court judgment relied on was ineffective in that it contained no formal adjudication of guilt but that if it had it would have been sufficient to disbar. A fourth Judge, Justice Ellis, was of the view that the judgment even with the technical defect was sufficient. The judgment of the court clearly fails to support the conclusion contended for by respondent.
At the same time the petitioner claims that State v. Snyder, 1939, 136 Fla. 875, 187 So. 381, concludes this point against respondent. We do not agree to this either. State v. Snyder, supra, does contain language to the effect that under Section 454.18, Florida Statutes, F.S.A., Sec. 4196, Compiled General Laws, a conviction of *735 embezzlement sua sponte disbars an attorney. Actually this observation was totally unnecessary to the decision. It was a statement which may be classed as dictum and therefore not controlling as precedent. The case actually stood for the proposition that a pardon does not sua sponte operate to eliminate the taint of the conviction so far as disbarment is concerned. See also, Branch v. State, 120 Fla. 666, 163 So. 48. Furthermore, as we have pointed out, this statute no longer binds us with any conclusive effect.
As so analyzed, the first Branch case and the Snyder case are entirely harmonious. The sum of both of them is that, in a disbarment proceeding based on conviction of a crime, the proof of conviction and an adjudication of guilt are sufficient to establish a prima facie case for disciplinary action. Due process, however, requires that the accused lawyer shall be given full opportunity to explain the circumstances and otherwise offer testimony in excuse or in mitigation of the penalty.
In the instant case this procedure was followed. The respondent was given a full and complete hearing. State ex rel. Florida Bar v. Caffee, Fla. 1954, 74 So.2d 229. He had every opportunity to explain the facts and circumstances preceding and surrounding the adjudication of guilt pursuant to his plea of nolo contendere. His unfortunate physical condition was elaborated upon in great detail starting with the year 1950. He did not at any time categorically deny the charges that had been preferred against him by the federal government. He did thoroughly undertake to explain his declination to defend himself against the charges on the basis of his obvious critical physical condition which so far as this record reveals is admitted.
The record comes to us therefore on a judgment of guilt of a federal felony (income tax evasion) based on a plea of nolo contendere necessitated by the serious cardiac condition of the accused. Does this record justify disciplinary action under Articles X and XI of our Bar Integration Rule? We think that it does.
We are of the view that when a lawyer is found guilty of a felony the adjudication of guilt is sufficient to justify setting in motion the disciplinary process. It may not, of itself, always prove him unfit to practice law. However, when not adequately controverted or explained after a full and fair hearing, the judgment of guilt may then constitute the basis for disciplinary action. 3 Fla.Jur. "Attorneys at Law" Section 97; State ex rel. Arpagaus v. Todd, 225 Minn. 91, 29 N.W.2d 810, 175 A.L.R. 776.
Many times have we said that the practice of law is a privilege. The standing of the profession in a community is often measured in the lay mind by the deviations of the small minority who break the rules rather than by the fidelity and devotion of the overwhelming majority who regard their license to practice as a sacred trust. So it is that in disciplinary matters we justly impose higher standards of conduct on the lawyer than we demand of the layman who is not charged with a similar trust. We do so in this case.
We therefore hold that this record sustains the recommendation of both the Referee and the Board of Governors of The Florida Bar that appropriate disciplinary action be taken. The nature of the action that would seem appropriate on the showing made must now be determined.
We must approach this problem with an understanding of the factors that should influence our judgment. Mr. Justice Terrell who has many times written for the Court on this subject outlined these elements in State ex rel. Florida Bar v. Murrell, Fla. 1954, 74 So.2d 221, 227, when he wrote:
"The judgment in a case like this must have these factors in mind: (1) it must be just to the public and must *736 be designed to correct any anti-social tendency on the part of respondent as well as deter others who might tend to engage in like violations; (2) it must be fair to respondent at the same time the duty of the court to society is paramount."
Measured by these standards the question recurs as to whether respondent should be disbarred or suspended.
Our study of the record sustains the thought that because of a severe cardiac condition (angina pectoris) respondent will never again be able to engage actively in the practice of law. He is now approaching 57 years of age. The medical conclusions as to his physical disablement are supported not only by his own physicians, themselves eminent in their field, but also by two eminent heart specialists who examined respondent at the request of the federal government during his income tax troubles. Despite the fact that he was found guilty of a serious offense, there was undisputed testimony in the record, and the Referee of this Court actually found that "respondent has a good reputation for honesty and fair dealings in the community in which he resides." If complainant had any evidence to the contrary it was not tendered by the record. The offense of which respondent was convicted did not involve a vileness or baseness of character such as perjury, bribery or embezzlement, albeit it was a serious violation of the canons of ethics governing the profession and certainly one not to be lightly regarded or condoned.
In reviewing our most nearly analogous precedents involving similar offenses we find two cases of similar import. In State ex rel. Florida Bar v. DeCarlo, supra, the Board of Governors of The Florida Bar recommended and this Court approved a suspension of one year for violation of the income tax laws, the violation being a federal felony. In State ex rel. Florida Bar v. Turner, supra, the Board of Governors recommended and this Court approved five years probation for one found guilty of a wilful failure to file income tax returns.
In another recent case, State ex rel. Florida Bar v. Sears, Fla. 1956, 89 So.2d 494, the Referee felt that conviction of burglary required automatic disbarment under Section 454.18, Florida Statutes, F.S.A. The Board of Governors instead recommended suspension until his civil rights may be restored. This Court approved suspension.
Giving prime weight to the factor that the protection of the public against unworthy lawyers is a salient objective of all disciplinary proceedings and balancing this factor against our responsibility to do justice in the particular case, it is our view that the recommendation of the Referee that respondent be suspended from the practice of law for a period of two years is a just and effective judgment. In the language of Mr. Justice Terrell, quoted above, it is our view that such a judgment will be just to the public in that it should correct any anti-social tendency on the part of the respondent and should deter others who might tend to engage in like violations. We deem it fair to the respondent on the basis of the record presented to us.
It follows therefore that the recommendation for disbarment is not approved but, consistent with the recommendation of the Referee, it is ordered that the respondent be and he is hereby suspended from the practice of law for two years from the date of this order.
HOBSON and O'CONNELL, JJ., and GILLIS, Associate Justice, concur.
THOMAS, Acting C.J., and DREW, J., concur specially.
ROBERTS, J., dissents.
*737 DREW, Justice (concurring specially).
I agree to all of opinion and judgment except that I am of the view that all costs should be assessed against respondent which have been incurred by The Florida Bar through the proceedings of the referee.
THOMAS, J., concurs.
ROBERTS, Justice (dissenting).
The majority opinion suspends the professional license of respondent for a period of two years, because he entered a plea of nolo contendere under the pressure of severe illness to an indictment charging a violation of the U.S. Internal Revenue Code. In my opinion, such a violation is malum prohibitum and not malum in se, and therefore is not a sufficient basis, standing alone, to deprive a citizen of this state of his professional status. In Duggar v. State, Fla., 43 So.2d 860, this court refused to disqualify a juror in the state court where he had been convicted in the federal court of the U.S. Revenue laws relating to whiskey  on the basis that such a violation of the federal law did not affect his qualification as a juror under state law. The record is replete with evidence that the respondent has a good reputation for honesty and fair dealing in the community in which he resides, and the referee found such to be a fact. The complainant did not offer any evidence to the contrary. I think the matter is influenced by the decision of this court in the Duggar case. Further, it is my opinion that a plea of nolo contendere to a charge of violating the U.S. Internal Revenue Code, in the absence of some other dereliction, is not sufficient to deprive the respondent of his professional status. Nor have I found in this court where any of the other professions  architects, engineers, physicians, etc.  have sought to construe such a violation as disqualifying their members from practicing their profession, where such person otherwise has a good reputation for honesty and fair dealing.
Further, even if sufficient to constitute a violation of the Code of Ethics, under the record here present, suspension for a period of two years is excessive. Two analogous cases have recently been before this court, viz. DeCarlo and Turner, both cited in the majority opinion. DeCarlo after being adjudged guilty of a violation of federal income tax laws, was suspended for a period of one year, and Turner, after being adjudged guilty of income tax evasion, was placed on probation for five years with no suspension of his professional license. Under all the evidence in this case, the respondent, at most, should be placed on probation.
I therefore respectfully dissent.

On Petition for Rehearing
PER CURIAM.
Counsel for appellant having filed in this cause petition for rehearing and it having been considered, it is ordered that said petition be and the same is hereby denied.
THOMAS, Acting C.J., and HOBSON, DREW, THORNAL and O'CONNELL, JJ., concur.
ROBERTS, J., and GILLIS, Associate Justice, dissent.
GILLIS, Associate Justice (dissenting).
With considerable reluctance and apologies to the participating members of the Court with whom I sat as a pinch-hitter  to use a baseball expression  on the occasion of the oral argument on original appeal, after a more painstaking review and consideration of the record and the final majority opinion, I am constrained to withdraw my concurrence in the opinion filed February 6, 1957, and in the denial of the petition for rehearing.
It appears by the record and according to the recitals in the opinion that the prosecuting *738 authority, The Florida Bar, established by testimony produced before the Referee that the respondent had been indicted by a federal grand jury for filing false and fraudulent income tax returns for the years 1945 and 1946, to which he entered a plea of nolo contendere and was convicted and adjudged guilty by reason of which The Florida Bar "contended that the respandent was guilty of the charges against him" (emphasis supplied).
The charges against the respondent were in four counts:
(a) He had been convicted of an infamous crime within the meaning of Section 454.18, Florida Statutes 1953, F.S.A.
(b) He was guilty of conduct in the practice of his profession in violation of Canon 30, Rule B, Section II, Code of Ethics, 31 F.S.A.
(c) He was guilty of acts forbidden or prohibited by law within the meaning of Canon 32, Rule B, Section II, Code of Ethics; and
(d) He was guilty of professional misconduct within the meaning and intent of Articles X and XI of the Integration Rules of The Florida Bar, 31 F.S.A.
The Referee appears to have found the proof sufficient to establish conviction of an "infamous crime" within the meaning of F.S. § 454.18, F.S.A. justifying disciplinary action under Article XI of the Integration Rules, but found Canons 30 and 32 of Rule B, Code of Ethics, inapplicable because of their relation to professional rather than private conduct, thereby disposing of all counts of the complaint except (a) as coupled with Integration Rule XI which provides "conviction * * * in any court of this state or of any other state, territory, or of the United States of any crime or offense that is a felony under the laws enforced [sic] by such court shall be conclusive proof * * *."
Assuming the dual role of prosecutor and arbiter the complainant "approved" the finding of the Referee that the respondent had been convicted of an infamous crime under F.S. § 454.18, F.S.A., "disapproved" his finding that Canon 32, Rule B, Section II, Code of Ethics, was inapplicable, and by not mentioning it inferentially agreed that Canon 30, Rule B, Section II, was also inapplicable.
Significantly neither the Referee nor the complainant found or suggested that the respondent had been guilty of professional misconduct. Rather the contrary is made to appear. Neither does the opinion appear to regard respondent's professional as distinguished from his private conduct to be involved, but that his conviction of an offense  an isolated case  against another sovereignty is sufficient to justify suspension under Article XI of the Integration Rules, the original draft of which was adopted March 4, 1950, long after the commission of the crime of which respondent was found guilty and when membership in any association of lawyers was a matter of choice rather than of compulsion as under the present regime  comparable to the closed shop in organized labor circles to which Section 12 of the Declaration of Rights, as amended in 1944, F.S.A., may well be applicable  under which the complainant by rule of court occupies its present position of eminence with power and authority over its constituent membership to an extent unprecedented until the comparatively recent past during which radical changes have been sought and attained in response to what may be politely termed an hysterical urge for innovations in governmental establishments generally, a trend toward bureaucracy originally inspired by the euphonious philosophy of the so-called New Deal and encouraged and given renewed impetus by the sweeter sounding tenets of the so-called Fair Deal.
Since the judgment of the majority is based upon the commission of an offense against a federal statute, which in this instance at least was "enforced", and not against the Florida Statute cited, except by *739 association as a violation of Article XI of the Integration Rules, not in existence at the time of the offense, as already observed, it seems not impertinent to remind ourselves of that which is a matter of common knowledge, i.e., that federal income tax laws are violated with notorious frequency and impunity, claims of millions settled for paltry thousands, often entirely forgiven. In other words, avoidance of income tax payments by whatever device has become fashionable, the order of the day, a mark of superior business acumen without odium.
If as observed in the dissenting opinion of Justice ROBERTS the holding of this Court in Duggar v. State, Fla., 4 So.2d 860, should influence the decision in this case, the later case of Lefcourt v. Streit, Fla., 91 So.2d 852, in which conviction of perjury, easily falling into the category of infamous crimes, in another state did not render the convict incompetent as a witness in any court of this state, notwithstanding the provisions of F.S. § 90.07, F.S.A., is perhaps more persuasive.
Section 17 of our Declaration of Rights prohibits the enactment of ex post facto laws and the rule is well established that a law which makes an act criminal that was not criminal at the time of its enactment, or which increases the punishment, "or which relation of the punishment alters the situation of the party to his disadvantage" falls under the constitutional ban. Higginbotham v. State, 88 Fla. 26, 101 So. 233.
While this Court long ago adopted the rule that a disbarment proceeding is not a criminal prosecution and that a judgment of conviction in such a proceeding can be but a revocation of a formerly granted permit to practice law, State ex rel. Keyhoe v. McRae, 49 Fla. 389, 38 So. 605, 606, the rules and regulations of The Florida Bar have now been given the force and effect of law under which punishment may be inflicted as severe and humiliating and often more disastrous, not only to the offender but to his unoffending family, than imprisonment in the state prison consequent upon conviction of a felony, therefore strikingly analogous to criminal statutes.
Desirable as purity of the legal profession is and commendable as professed purposes and objectives of The Florida Bar may be, and in recognition of the investiture in this Court by consent of the people of "exclusive jurisdiction over the admission to the practice of law and the discipline of persons admitted" independent of "any legislative determination on the subject of who must be or shall be disciplined" as announced in the opinion, it would seem not only equally desirable but incumbent upon the Court as the final arbiter of the law and the facts  and as the executioner  from whose judgment there is no appeal save and except to the individual consciences of its members, in controversies where as here the activities of the supervising agency seeking the removal from its ranks of one of its members, to proceed with extreme caution to the end that every constitutional right of the accused be protected and that he be not exposed to public contempt, hatred and ridicule by the arbitrary and arrogant exercise of authority sometimes manifested in legal circles with a pattern of which this Court has had recent occasion to deal.
While the powers vested in this Court by Section 23 of Article V of the Constitution adopted November 6, 1956, are broad and comprehensive, it is interesting to note that in the early case of State ex rel. Fowler v. Finley, 30 Fla. 325, 11 So. 674, 675, 18 L.R.A. 401, a disbarment proceeding, the Court took occasion to say of the delegation to another of the authority to take the testimony that the Court in so doing heard the evidence only by proxy and that as the trier of facts the judge should occupy the same position as that of a jury in the trial of a criminal case "so that he may observe the manner of the witnesses, and may give to their evidence credence or disbelief * * * according as their manner of testifying may indicate prejudice, malice, or other sinister motive to subserve."
*740 The power to purge the legal profession of unworthy members is traditionally inherent in the courts and has been exercised from time immemorial but until of late in proceedings instituted by constitutionally created prosecuting officials, not by competitors, and carried to conclusion under the supervision of a judge in position to evaluate the evidence relied upon  in the light not only of the facts but of the motivating influences prompting the inquiry and the atmosphere generally surrounding the case.
It was said by this Court in State ex rel. Florida Bar v. Murrell, Fla., 74 So.2d 221, 223, on authority of well-known authors that "disbarment is the extreme measure of discipline and should be resorted to only in cases where the lawyer demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards", and that "for isolated acts censure, public or private, is more appropriate" (emphasis supplied).
I am acutely conscious of the recently conferred authority of this Court in the matter of admission and discipline of attorneys, particularly to exercise that authority through commissions consisting of members of the bar of its own choosing, and to prescribe the procedure to be followed. My position is simply one of hesitant disagreement with the final judgment.
The respondent is well advanced in years, suffering from maladies that have already perhaps ended his professional career as completely and permanently as a judgment of disbarment would have done.
The Referee found it unnecessary and therefore did not determine whether the crime of which respondent was found guilty involved moral turpitude. It is stated in the opinion that "there was undisputed testimony in the record and the Referee of this Court actually found that `the respondent has a good reputation for honesty and fair dealings in the community in which he resides.' If complainant had any evidence to the contrary it was not tendered by the record. The offense of which respondent was convicted did not involve a vileness or baseness of character such as perjury, bribery, or embezzlement".
It would seem difficult indeed to find words more clearly calculated to express the idea that the dereliction charged to the respondent was purely technical, involving no taint of infamy. Furthermore, even though the constitutional inhibition against ex post facto laws is not to be considered, the retrospective application of the rule invoked is, in my humble judgment, wholly unwarranted in the circumstances of this case.
I would dismiss the complaint.
For reasons stated I would grant the rehearing and recede from the former opinion
ROBERTS, J., concurs.