448 So.2d 1019 (1984)
THE FLORIDA BAR, Complainant,
v.
Alex P. LANCASTER, Respondent.
No. 60850.
Supreme Court of Florida.
April 12, 1984.
*1020 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Patricia J. Brown, Branch Staff Counsel, Tampa, for complainant.
Richard T. Earle, Jr., of Earle & Earle, St. Petersburg, and Robert Jackson McGill of the Law Offices of Robert Jackson McGill, Venice, for respondent.
PER CURIAM.
We have for review a referee's report recommending that Alex P. Lancaster be disbarred. We have jurisdiction pursuant to our authority to regulate the discipline of persons admitted to the practice of law in this state. Art. V, § 15, Fla. Const. We decline to adopt the referee's recommendation and instead order that respondent be suspended from the practice of law for two years.
The Florida Bar instituted this disciplinary proceeding by filing a six-count complaint pertaining to respondent's having had possession of a boat with an altered identification number. Counts one and two alleged that respondent had pleaded nolo contendere to the misdemeanors of altering the identification number on a boat and of possessing a boat with an altered identification number. Count three charged him with scheming to influence a witness not to appear at respondent's trial. Count four charged him with attempting to induce another witness to testify falsely. Count five charged him with counseling a witness knowing that the witness had other counsel. Count six charged respondent with lying under oath to a state attorney about his involvement in and knowledge of the alteration of the identification number on a boat.
At the beginning of the hearing The Florida Bar stated that it was abandoning count five, and Lancaster admitted all the factual allegations in counts one and two. The Florida Bar proceeded to present evidence on the remaining counts, calling Lancaster as its only witness. Lancaster explained that his roommate had purchased the boat from Stretton Gramlich. Lancaster stated that after the boat was purchased and moved to his back yard, he saw Gramlich glue a number on the boat. He admitted that his suspicions were then aroused that there might be something wrong. He also admitted that when the state attorney began making inquiries, he *1021 lied about his knowledge of this alteration. Lancaster denied having any intention to tamper with any persons who were to be witnesses against him. In mitigation he testified that he was an active member of The Florida Bar and the Sarasota County Bar Association and that he had never before been the subject of any grievance or disciplinary matter.
During Lancaster's testimony, the Bar sought to introduce into evidence a transcript of a conversation between Lancaster and Gramlich recorded in Lancaster's home by a warrantless "body bug" worn by Gramlich. Lancaster objected to the admission of the transcript on the ground that the recording was made in violation of article I, section 12 of the Florida Constitution. The referee at first sustained the objection but after the hearing reconsidered his ruling and admitted the transcript into evidence, ruling that the exclusionary rule does not apply to attorney disciplinary proceedings.
The transcript revealed that Lancaster told Gramlich that they had to stick together and keep their stories straight. In the conversation, Lancaster indirectly suggested the need to go to West Virginia to talk to the person from whom Gramlich bought the boat to find out whether that person would testify that the boat was stolen. According to the transcript Lancaster said that if that person would testify that it was his boat he sold to Gramlich then there would be no problem, but if that person turned out not to be the real owner then they would have to find a way to induce him not to come to Florida and testify.
Lancaster submitted a deposition of Gramlich for the referee to consider should he decide to admit the transcript of the recorded conversation. In the deposition Gramlich stated that he believed he bought the boat from the true owner. However, he also stated that if that did not turn out to be the case he was under the impression that Lancaster would want him to alter his story and to assist Lancaster in convincing the person from whom he bought the boat not to testify.
In defense Lancaster called two witnesses who testified about his character. One was an attorney who explained that Lancaster handled a substantial number of workers' compensation cases for claimants who would be without assistance if Lancaster were suspended. The other witness testified that Lancaster was an active member of the Sertoma Club.
The referee issued a report recommending that Lancaster be found guilty of all six counts of the complaint despite the fact that The Florida Bar had abandoned one of the counts. Although The Florida Bar recommended that Lancaster be suspended for one year, the referee recommended that Lancaster be disbarred.
Lancaster claims that he cannot be found guilty of counts one and two because the only evidence presented in support of these two counts was the fact that he pleaded nolo contendere to two misdemeanors. He points out that adjudication of guilt on these offenses was withheld. Lancaster argues that his plea of nolo contendere was an admission of the facts alleged in the information only for purposes of that particular proceeding and could not be used as evidence in this proceeding. He asserts that his plea of nolo contendere does not by itself constitute a violation of the Code of Professional Responsibility and that there was insufficient proof that he was guilty of the misdemeanors charged.
We disagree with these contentions. We first note that the admission of the nolo contendere plea into evidence was proper. A referee may consider evidence of an attorney's pleading nolo contendere even though the plea may relate to charges unconnected with those being presented at the disciplinary hearing. The Florida Bar v. Stillman, 401 So.2d 1306 (Fla. 1981). An attorney's pleading nolo contendere to a misdemeanor is relevant to his fitness to practice law. See The Florida Bar v. Agar, 394 So.2d 405 (Fla. 1980).
As for Lancaster's argument that the evidence was insufficient, this Court has previously held that a nolo contendere *1022 plea along with an adjudication of guilt is sufficient to sustain disciplinary action. See The Florida Bar v. Brown, 377 So.2d 1176 (Fla. 1979); The Florida Bar v. Duffee, 343 So.2d 829 (Fla. 1977); The Florida Bar v. Silver, 313 So.2d 688 (Fla. 1975); State ex rel. Florida Bar v. Evans, 94 So.2d 730 (Fla. 1957). In Evans this Court stated that

in a disbarment proceeding based on conviction of a crime, the proof of conviction and an adjudication of guilt are sufficient to establish a prima facie case for disciplinary action. Due process, however, requires that the accused lawyer shall be given full opportunity to explain the circumstances and otherwise offer testimony in excuse or in mitigation of the penalty.
Id. at 735 (emphasis in original). This Court has also disciplined an attorney who had pleaded nolo contendere to a crime even though there had been no adjudication of guilt. The Florida Bar v. Bunch, 195 So.2d 558 (Fla. 1967). This Court has also disciplined an attorney who had pleaded nolo contendere and stipulated to a ninety-day suspension. The Florida Bar v. Miller, 322 So.2d 502 (Fla. 1975). Thus the important factor is not whether there has been an actual adjudication of guilt, but whether the attorney has been given a chance to explain the circumstances surrounding his plea of nolo contendere and otherwise contest the inference that he engaged in illegal conduct.
In this case Lancaster did not contest the allegations that his conduct constituted a violation of the disciplinary rules. At the hearing he did try to explain that he was not guilty of any crimes since he did not know for sure that the number he saw Gramlich affix to the boat was any different from the number that was previously there. However, he admitted that his suspicions were aroused by Gramlich's actions and he stipulated to the allegations contained in counts one and two that his actions were in violation of Disciplinary Rules 1-102(A)(1), (3), (4), and (6). Because of this stipulation, The Florida Bar was not obligated to produce any further evidence in support of these allegations and Lancaster was precluded from challenging them. Therefore, we find no error in the referee's recommendation that Lancaster be found guilty of violating these disciplinary rules.
Next Lancaster argues that the referee erred by admitting into evidence the transcript of his conversation with Gramlich which was recorded by a warrantless "body bug." Lancaster asserts that the exclusionary rule formerly embodied in article I, section 12, Florida Constitution, prohibited the use of such evidence under this Court's holding in State v. Sarmiento, 397 So.2d 643 (Fla. 1981). The Florida Bar contends that the exclusionary rule does not apply to attorney disciplinary proceedings, citing Emslie v. The State Bar of California, 11 Cal.3d 210, 520 P.2d 991, 113 Cal. Rptr. 175 (1974) and People v. Harfmann, 638 P.2d 745 (Colo. 1981).
We agree with the Bar's argument. As was explained by the Colorado Supreme Court in People v. Harfmann, lawyer-discipline proceedings are sufficiently distinguishable from criminal proceedings to call for a different rule of law as regards the application of the exclusionary rule for evidence obtained by an unreasonable search or seizure. See also In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). We therefore hold that the referee was not required to exclude from evidence the transcript of the conversation recorded by the use of warrantless electronic surveillance.
We find that there was sufficient evidence to support the referee's finding that Lancaster had conspired to influence a potential witness not to testify at his trial. In his deposition Gramlich stated that Lancaster wanted him to accompany Lancaster to West Virginia to try to convince the person from whom Gramlich bought the boat to refrain from providing any information to the authorities. We therefore adopt the referee's recommendation that Lancaster be found guilty of the charges alleged in count three, by virtue of his having planned with another to secure the absence *1023 of a material witness from a criminal proceeding.
Count four charged Lancaster with attempting to induce Gramlich to testify falsely. The referee failed to make any specific findings as to this particular allegation. Instead the referee confused the allegations of this count with those in count three and recommended Lancaster be found guilty under count four by virtue of his planning to arrange the absence of the person from whom Gramlich bought the boat. In effect then the referee doubled up these two counts and used the same factual finding to support his recommendation that Lancaster be found guilty of two separate items of misconduct. Since there is no specific finding that Lancaster attempted to induce Gramlich to testify falsely, we cannot adopt the referee's recommendation that respondent be found guilty of the allegations contained in count four of the complaint.
Lancaster argues, and the Bar concedes, that the referee erred in recommending that Lancaster be found guilty of count five of the complaint after the Bar abandoned that count before the hearing began. We agree and therefore do not adopt the referee's findings with respect to count five.
As for count six, Lancaster admitted to the referee that he initially lied to a state attorney about his knowledge that Gramlich had affixed an identification number to the boat and his suspicions that the boat might have been stolen. We therefore adopt the referee's recommendation that Lancaster be found guilty of lying to a law enforcement official.
In conclusion, we find that Lancaster has failed to conform to the ethical standards binding on all attorneys. Though Lancaster's actions did not have any detrimental effect on any of his clients, his lack of complete candor about his unwitting involvement in a suspicious activity raises questions about his fitness to practice law. However, because of his previously untarnished record and his involvement in community affairs and charitable efforts, we decline to hold that Lancaster's conduct warrants disbarment. We therefore order that he be suspended from the practice of law for a period of two years. The suspension shall be effective May 14, 1984, thereby giving respondent time to close out his practice and take the necessary steps to protect his clients, and it is ordered that respondent shall not accept any new business. Lancaster is also ordered to pay the costs of these proceedings in the amount of $1,123.23. Lancaster may be reinstated after two years upon payment of costs and proof of rehabilitation.
It is so ordered.
ADKINS, BOYD, McDONALD and SHAW, JJ., concur.
ALDERMAN, C.J., and EHRLICH, J., concur in part and dissent in part with opinions, in which OVERTON, J., concurs.
OVERTON, J., concurs in part and dissents in part:
I concur with the majority opinion except as to the discipline imposed. I would disbar the respondent.
ALDERMAN, Chief Justice, concurring in part, dissenting in part.
I agree with all parts of the majority opinion except for its conclusion that disbarment is not warranted. Lancaster's misconduct in the present case is the antithesis of the moral and ethical conduct expected from those admitted to the practice of law in this state and warrants nothing short of disbarment. He repeatedly lied under oath to a state attorney during an official criminal investigation and he attempted to thwart the administration of criminal justice by scheming to procure the absence of witnesses from a criminal prosecution. His unwillingness to tell the truth carried forward to the final hearing before the referee. The referee, in recommending disbarment, expressly considered Lancaster's steps to rehabilitate himself and his value in the local legal community but concluded:

*1024 [T]he corruption of the system he originally swore to uphold and defend looms too large to allow him to remain on the rolls of a profession whose hallmark is supposed to be integrity. The stark truth is that even in the hearing before the referee, one brief step away from Supreme Court review, he lied in an attempt to save his license... .
[T]he principles eloquently expressed in Dodd v. The Florida Bar, 118 So.2d 17 (Fla. 1960), should and do have a timeless ring. That ringing can still be heard today through The Florida Bar v. Agar, 394 So.2d 405 (Fla. 1980). It rings a clear message: "if you subvert the judicial system by intentionally tampering with the pursuit of truth, you will likely forfeit your license to practice law."
I would adopt the referee's recommendation that Lancaster be disbarred.
OVERTON, J., concurs.
EHRLICH, Judge, concurring in part and dissenting in part.
I am disturbed by the majority's inexplicable leniency toward one who has been found guilty of undermining the very foundation of our profession and of the system of the administration of justice.
Lancaster, an officer of the court, lied to a constitutional officer performing his legal duty to investigate criminal activity. Lancaster knowingly and willfully violated the oath he had taken before giving testimony to the state attorney; moreover, he violated the oath he took to become a member of The Florida Bar.
It is axiomatic that an applicant for admission to The Florida Bar who lies or omits the truth on the bar application is presumed unfit for admission to the legal profession in this state. See, e.g., Fla.Sup. Ct.Bar Admiss.Rule, art. VII, § 2; Fla.Bar, Exam.Rule I, § 6, Florida Board of Bar Examiners v. Lerner, 250 So.2d 852 (Fla. 1971). This is justified because our profession can operate properly only if its individual members conform to the highest standard of integrity in all dealings within the legal system. How much more is this true of one already reaping the benefits of the profession, with firsthand knowledge of the inner workings of the system. An attorney who endeavors to secure the absence of a material witness from a criminal proceeding and who lies under oath to the state attorney during the course of an investigation of criminal activity, has made a mockery of all that The Florida Bar represents to both the public at large and to all of its members. He should no longer be a part of it.
I would disbar the respondent.
OVERTON, J., concurs.