25 So.3d 728 (2009)
In re Robert E. CLARK.
No. 2009-B-1631.
Supreme Court of Louisiana.
December 1, 2009.
*729 Charles Bennett Plattsmier, Baton Rouge, Eric Reiley McClendon, Roseland, for applicant.
Schiff Law Corporation, Leslie J. Schiff, Opelousas, Robert Elisha Clark, Vidalia, for respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.[*]
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Robert E. Clark, an attorney licensed to practice law in Louisiana.[1]

UNDERLYING FACTS
On January 13, 2007, Dennis Roberts was arrested in Natchez, Mississippi and booked on charges of possession of cocaine. Mr. Roberts, a longtime friend and client of respondent's, subsequently told law enforcement officers in Concordia Parish that, in return for leniency on his cocaine charge, he could arrange to obtain marijuana from respondent. The officers allowed Mr. Roberts to make telephone contact with respondent, and then followed Mr. Roberts to respondent's home in Vidalia, where respondent gave Mr. Roberts a small bag of marijuana. No money exchanged hands.
Thereafter, police officers handcuffed respondent and held him in the front yard while they made a safety sweep of his home. The officers then obtained a search warrant for the residence, but they did not tell the judge who signed the warrant *730 about the "safety sweep." The search of respondent's home turned up 7 ½ ounces of marijuana packaged in various amounts and stored in Ziploc bags. A variety of drug paraphernalia, some with residual amounts of cocaine and marijuana, was also found, as were a bottle containing the prescription drug Xanax, three doses of a muscle relaxant in an unmarked bottle, and a small amount of white powder, which field-tested positive for cocaine.
Respondent was arrested and charged with possession with intent to distribute marijuana, distribution of marijuana, possession of cocaine, and possession of drug paraphernalia. At the time of his arrest, respondent tested positive for marijuana but no other drugs. On January 14, 2007, respondent was released on a $40,000 bond.
In March 2007, respondent self-reported his arrest to the ODC. In June 2007, the ODC filed a petition for interim suspension for threat of harm based on respondent's arrest. On June 22, 2007, this court placed respondent on interim suspension and ordered him to show cause before a hearing committee why the court should not maintain the interim suspension. In re: Clark, 07-1221 (La.6/22/07), 958 So.2d 675.
Following the hearing on the interim suspension, the hearing committee filed its report with this court, recommending that the interim suspension order be dissolved.[2] On August 13, 2007, respondent entered into a five-year contract with the Lawyers Assistance Program ("LAP").[3] On August 29, 2007, we ordered respondent to undergo a substance abuse evaluation, the results of which were filed with the court in December 2007. The evaluation revealed no "neuropsychological reason [respondent] could not return to work and continue his practice as a trial attorney." On January 9, 2008, we dissolved the interim suspension. In re: Clark, 07-1221 (La.1/9/08), 972 So.2d 323.
In the meantime, most of the evidence against respondent in the criminal case was suppressed, including all of the drugs and paraphernalia seized in the search of respondent's home.[4] Accordingly, by letter dated March 11, 2008, the district attorney for Concordia Parish informed the ODC that there is "no evidence in which to prosecute" respondent on criminal charges and that the matter "was therefore not accepted for prosecution."

DISCIPLINARY PROCEEDINGS
In March 2008, the ODC filed one count of formal charges against respondent, alleging that his use of marijuana violated Rules 8.4(a) (violation of the Rules of Professional Conduct) and 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.
*731 Respondent, through counsel, answered the formal charges, admitting that he began using marijuana in 1994 shortly after being diagnosed with glaucoma. Respondent further maintained that his marijuana use was "personal and limited to weekend use for medicinal purposes only." He claimed that he stopped using marijuana in January 2007. Respondent also claimed that as a result of an illegal entrapment, he gave a ¼ ounce bag of marijuana to Mr. Roberts, with whom he had been friends for eighteen years, and who also happened to be his client. Respondent admitted he should be sanctioned for this conduct but argued that any sanction beyond the six months and seventeen days he served on interim suspension would be "extreme, too severe, and inappropriate."

Hearing Committee Report
This matter proceeded to a hearing on the merits, following which the hearing committee submitted its report. At the outset, the committee addressed the following evidentiary issues raised by respondent:
Entrapment  The committee found that this defense has a limited place in disciplinary proceedings, and any evidence obtained as a result of the alleged entrapment (relevant only as to respondent's giving marijuana to Mr. Roberts) would be allowed. The committee noted, however, that respondent failed to prove the elements of entrapment.[5] The fact that respondent provided marijuana to Mr. Roberts at Mr. Roberts' request does not mean that respondent was entrapped. Respondent readily assented and did not need to be persuaded to share his marijuana "to help his friend obtain possibly non-consensual sexual favors."[6]
Suppression  The committee determined that the exclusionary rule does not apply to disciplinary matters, and the evidence that had previously been suppressed would be allowed. The information excluded from the criminal proceeding was allowed into evidence at the hearing because the ultimate goal of the hearing committee is to have as complete a record as possible. The committee also noted that because respondent had admitted to marijuana use and to giving Mr. Roberts marijuana, the effect of excluding the evidence obtained through the search warrant would be almost nil as to the result in these proceedings.
Motion by respondent to exclude the deposition of Mr. Roberts  The deposition of Mr. Roberts was taken after the hearing. During cross-examination, respondent's counsel asked Mr. Roberts about his guilty plea to a charge of contributing to the delinquency of a minor. At that point, Mr. Roberts refused to answer any more questions and left the deposition prior to the completion of the cross-examination. Respondent then filed a motion with the *732 hearing committee seeking to exclude the deposition. However, the committee allowed the deposition into evidence, reasoning that respondent's objection goes to the weight of the evidence, not its admissibility.
Turning to the merits of the formal charges, after considering the testimony and evidence presented at the hearing, the committee made factual findings consistent with the underlying facts as set forth above. Respondent also testified that the marijuana found in his home belonged to him. He was aware that marijuana is illegal and stated that he used it to ease the symptoms of his glaucoma.[7] He further testified that he willingly and voluntarily gave Mr. Roberts marijuana because Mr. Roberts was his best friend. He also admitted to using marijuana the night he was arrested, which was confirmed by the drug screen.
Based on these findings, the committee determined that respondent violated Rules 8.4(a) and 8.4(b) of the Rules of Professional Conduct. The committee determined that the applicable baseline sanction ranges from suspension to disbarment.
In aggravation, the committee found that respondent has substantial experience in the practice of law (admitted 1983). The committee also considered respondent's rationale for giving Mr. Roberts marijuana (so Mr. Roberts could have sex with a girl) to be an aggravating factor, reasoning that respondent knowingly assisted his friend in taking advantage of another person while she was under the influence of an illicit substance. In mitigation, the committee found the following: absence of a prior disciplinary record and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for one year and one day, with no credit for the time he served on interim suspension. The committee also recommended that respondent maintain compliance with his five-year LAP contract, and pay all costs of these proceedings.
Both respondent and the ODC filed objections to the hearing committee's report and recommendation. Respondent argued that the sanction recommended by the committee is excessive and should be reduced to the time he spent on interim suspension. The ODC argued that the sanction recommended by the committee is too lenient and that a three-year suspension, with credit for the time respondent served on interim suspension, is appropriate in this matter.

Disciplinary Board Recommendation
After reviewing the record, the disciplinary board determined that the hearing committee's factual findings do not appear to be manifestly erroneous. Contrary to Louisiana law, respondent routinely purchased, possessed, and used marijuana from 1994 until January 2007. Further contrary to Louisiana law, respondent delivered a bag of marijuana to Mr. Roberts, resulting in respondent's January 13, 2007 arrest. At that time, 7 ½ ounces of marijuana, drug paraphernalia, chlorzoxazone (a muscle relaxant), Xanax, and a small amount of cocaine were found in respondent's home.[8] The board also determined *733 that the committee correctly decided the evidentiary issues raised by respondent and correctly found that respondent violated Rules 8.4(a) and 8.4(b) of the Rules of Professional Conduct.
Based on these findings, the board determined that respondent intentionally violated duties owed to the public and the legal profession. His conduct caused actual harm to the profession. Relying on the ABA's Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction ranges from suspension to disbarment.
The board found the following aggravating factors: a pattern of misconduct (use of marijuana from 1994 to 2007), multiple offenses, substantial experience in the practice of law, and illegal conduct. The board agreed with the committee that respondent's rationale for providing marijuana to Mr. Roberts should also be considered an aggravating factor. The board found the following mitigating factors: absence of a prior disciplinary record, full and free disclosure to the disciplinary board, and character and reputation.
Reviewing this court's prior jurisprudence involving the use and possession of illegal drugs, the board determined that this case is similar to In re: Bertucci, 08-1349 (La.9/26/08), 990 So.2d 1275. In Bertucci, the respondent was detained after a traffic stop and found to be in unlawful possession of various drugs and drug paraphernalia. He was released at the scene and taken to a hospital, where he sought substance abuse treatment. Thereafter, Bertucci was charged in federal court with one misdemeanor count of unlawful possession of controlled substances. He was not charged in state court. Bertucci subsequently successfully completed a pre-trial diversion program, and the federal charge was dismissed. This court then imposed a fully deferred two-year suspension upon Bertucci, subject to probation.
The board noted that what differs this matter from Bertucci, however, is that respondent distributed marijuana to Mr. Roberts, while Bertucci was not involved in the distribution of drugs. Cases involving the distribution of drugs show that an actual period of suspension has been imposed, with no time deferred. In Louisiana State Bar Ass'n v. Tilly, 507 So.2d 182 (La.1987), the respondent was arrested after he sold one ounce of marijuana for $100 to an acquaintance who was cooperating with the authorities. A search of Tilly's grandmother's residence revealed one-fourth pound of marijuana, drug paraphernalia, and a scale which Tilly claimed to have borrowed from a friend. Tilly pleaded guilty to a charge of distribution of marijuana and was sentenced to three years at hard labor, suspended, and placed on supervised probation with conditions. This court subsequently ordered that Tilly be suspended from the practice of law for two years.
Given the facts of this case, and with particular emphasis upon Bertucci and Tilly, the board recommended that respondent be suspended from the practice of law for two years, with credit for the time he served during his interim suspension. The board also recommended that, following the suspension, respondent be placed on probation to run concurrently with his LAP contract, which is in effect through August 2012.
Respondent filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this *734 court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Respondent has admitted to possessing and using marijuana from 1994 until January 2007. He has also admitted to giving ¼ ounce of marijuana to Mr. Roberts on the night of his arrest, which under the law is sufficient to constitute the distribution of marijuana.[9] Moreover, at the time respondent was arrested, marijuana and other drugs, as well as drug paraphernalia, were found in his home, all in violation of state law. The fact that this evidence was suppressed in the criminal proceeding against respondent does not require that we exclude it from evidence for purposes of this disciplinary matter.[10] Accordingly, by his conduct, respondent has violated Rules 8.4(a) and 8.4(b) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly violated duties owed to the public and the legal profession, causing harm to the legal profession. Under the ABA's Standards for Imposing Lawyer Sanctions, the applicable baseline sanction ranges from a suspension to disbarment.
The aggravating factors consist of a pattern of misconduct, substantial experience in the practice of law, and illegal conduct, including that involving the use of controlled substances. The following mitigating factors are present: absence of a prior disciplinary record, personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character and reputation, and remorse.
Considering the record in its entirety, we find the two-year suspension recommended by the disciplinary board is an appropriate sanction for respondent's possession and distribution of an illegal *735 drug. Accordingly, we will suspend respondent from the practice of law for two years, with credit for the time he served on interim suspension.[11]

DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Robert E. Clark, Louisiana Bar Roll number 1766, be and he hereby is suspended from the practice of law for a period of two years, with credit for the time served on interim suspension from June 22, 2007 through January 9, 2008. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
WEIMER, J., concurs in part and dissents in part.
WEIMER, J., concurring in part; dissenting in part.
I in no way condone the conduct for which Respondent is being disciplined and concur in the finding that he should be suspended. I dissent regarding the severity of the discipline imposed, noting the hearing committee recommended respondent should be suspended for a year and a day.
To address his marijuana use, Respondent has enrolled in the Lawyers Assistance Program (LAP) and his participation in the program has been termed "exemplary."
Character witnesses, including two judges before whom Respondent practiced, testified Respondent is a competent professional who does not pose a threat of harm to his clients or the public. The witnesses indicated Respondent's clients seem to appreciate the work he does and have not complained about him; the witnesses would not hesitate to hire Respondent as their attorney or to refer clients to Respondent. There has been no allegation or evidence any client of Respondent was ever harmed. There was no evidence Respondent was impaired while practicing law.
In mitigation, the Hearing Committee noted the fact Respondent has never been previously disciplined; he self-reported, making a full and complete disclosure; and he had a cooperative attitude. The Disciplinary Board found his good character and reputation were mitigating factors. Respondent was never convicted of any crime. Following his arrest, there was an interim suspension for a period of approximately six and a half months. However, following a hearing committee recommendation, this court ordered the interim suspension dissolved.
Based on the unique facts and circumstances related to Respondent's medical condition,[1] I believe a more limited period *736 of suspension, coupled with probation and conditions, would adequately serve the disciplinary system. See In re: Bertucci, 08-1349 (La.9/26/08), 990 So.2d 1275.
NOTES
[*] Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice Pro Tempore, participating in the decision.
[1] Respondent is also admitted to the practice of law in Mississippi and was previously admitted in Tennessee, where his license is currently inactive.
[2] One committee member dissented, stating that the interim suspension should be maintained.
[3] Attorney Steven Everett is monitoring respondent's performance under the contract on a monthly basis. In a June 5, 2008 letter, Mr. Everett indicated that respondent's compliance with the contract has been "exemplary." He also indicated that respondent has been quite active with the Narcotics Anonymous Group with which he is affiliated.
[4] Among other reasons for granting respondent's motion to quash and motion to suppress, the trial judge stated that "the so-called sweep was a warrantless search and ... all of the evidence was not stated, especially the evidence of the sweep, was not stated in the affidavit on which the search warrant was based."
[5] In State v. Brand, 520 So.2d 114 (La.1988), this court held that it is the defendant's burden to prove the affirmative defense of entrapment, i.e., that a law enforcement official or an undercover agent acting in cooperation with such an official, for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so. The court emphasized that "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.... Thus, the focus in determining an entrapment defense is on the conduct and predisposition of the defendant, as well as the conduct of the government agent." Id. at 117.
[6] Respondent testified that when Mr. Roberts called him and asked him for the marijuana, Mr. Roberts told him he wanted to "get a girl high and have sex." Respondent admitted that he knew it was wrong to give the marijuana to Mr. Roberts, but did so because Mr. Roberts was his best friend.
[7] The committee noted that no evidence of marijuana's medicinal benefit was offered, nor was there evidence that respondent's doctors had prescribed marijuana use as treatment for glaucoma.
[8] Although respondent testified at the hearing that he had prescriptions for the Xanax and the muscle relaxant, the board noted that he did not offer the prescriptions into evidence.
[9] While respondent argues that he was entrapped into giving the marijuana to Mr. Roberts, we agree with the hearing committee that the defense of entrapment has a limited place in disciplinary proceedings, and that in any event, respondent failed to prove the elements of entrapment in this case.
[10] See, e.g., The Florida Bar v. Lancaster, 448 So.2d 1019 (Fla.1984); People v. Harfmann, 638 P.2d 745 (Colo.1981); and Emslie v. State Bar, 11 Cal.3d 210, 113 Cal.Rptr. 175, 520 P.2d 991 (1974), all holding that the exclusionary rule does not apply to attorney disciplinary proceedings.
[11] The board recommended that following his suspension, respondent be placed on probation to run concurrently with his LAP contract. Because the active portion of respondent's suspension exceeds one year and will therefore require a formal application for reinstatement under Supreme Court Rule XIX, § 24, we decline to impose any conditions at this time. If and when respondent applies for reinstatement, the board may consider recommending appropriate conditions for reinstatement, including conditions for probation and continued compliance with a LAP contract.
[1] During the interim suspension hearing, expert medical testimony acknowledged there were therapeutic uses of cannabis for the treatment of glaucoma because it lowers intraocular pressure. Respondent testified without contradiction that a lower intraocular pressure corresponded with his marijuana use.